[No. B063790. Second Dist., Div. Six. Dec. 9, 1992.]

KENNETH E. MACAULAY, Plaintiff and Respondent, v.
MERT NORLANDER et al., Defendants and Appellants.

[No. B063980. Second Dist., Div. Six. Dec. 9, 1992.]

HELEN NEVE, Plaintiff and Respondent, v.
MERT NORLANDER et al., Defendants and Appellants.

**4**

---

Counsel

Jones, Day, Reavis & Pogue, Gerald W. Palmer, Douglas A. Kuber and Daniel D. McMillan for Defendants and Appellants.

Lowthrop, Richard, McMillan, Miller, Conway & Templeman and Gregory J. Ramirez for Plaintiffs and Respondents.

---

Opinion

**YEGAN, J.**—In this consolidated appeal, we hold that an introducing broker has standing, as a third party beneficiary, to enforce an arbitration agreement entered into between a clearing broker and a stock investor. Mert Norlander, Troy Norlander, and Sutro & Co. Incorporated appeal from an order denying their motion to stay proceedings and arbitrate fraud actions brought by their clients and respondents, Helen Neve and Kenneth E. Macaulay. (Code Civ. Proc., § 1294, subd. (a).) We reverse.

Sutro is a securities broker and provides brokerage services to private investors. As an introducing broker, it takes client orders and executes the transactions through a clearing broker. ■ "In industry parlance, an introducing broker [here, Sutro] is the firm whose account executives deal with customers, i.e., solicit orders and offer recommendations. A clearing broker, on the other hand, has no client contact, but places and executes orders with the exchange at the direction of the introducing broker." (*Van Luven* v. *Rooney, Pace Inc.* (1987) 195 Cal.App.3d 1201, 1203 [241 Cal.Rptr. 248].)

In January 1986 Neve met with Mert Norlander, a Sutro employee, and opened an investment account at Sutro's office in Westlake Village.

Macaulay opened a similar account in May 1986. Both later claimed they had been defrauded by Sutro, Norlander, and Sutro's office manager, Troy Norlander. On April 19, 1991, they commenced separate actions against appellants (collectively referred to as Sutro) for breach of fiduciary duty, fraud, misrepresentation, negligence, and conspiracy. Both complaints allege that respondents were fraudulently induced to invest in speculative securities.

Sutro filed a petition to compel arbitration based on a client agreement between respondents and the clearing broker, Tucker, Anthony & R.L. Day, Inc. (Tucker Anthony). The client agreement required that all controversies be arbitrated.[1] Respondents opposed the petition, contending that they had no recollection of the document. Respondents complained that the documents produced by Sutro were illegible and appeared to be altered.

The superior court ruled that Sutro had not established the authenticity of the client agreement or explained Sutro's relationship with Tucker Anthony. Sutro's petition to compel arbitration was denied without prejudice.

On October 15, 1991, Sutro renewed its request by filing a motion to stay further proceedings and compel arbitration. This time, legible copies were produced showing that respondents signed the client agreement on September 30, 1986, when Sutro retained Tucker Anthony as its new clearing broker. Five supporting declarations were filed stating that Sutro mass-mailed the client agreement to its clients on September 15, 1986. A Sutro cover letter accompanied the mailing and described Tucker Anthony's new role as clearing broker. Sutro's clients were asked to execute the client agreement and mail it back if they wished to maintain their accounts with Sutro. The letter stated that "[t]he relationship between Sutro and Tucker Anthony will begin with transactions of October 20, 1986. If for any reason you do not wish your account to be included, please advise us prior to October 1, 1986."

---

[1] The client agreement states: "9. ARBITRATION. It is understood that the following agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such a waiver would be void under the federal securities laws. *You agree*, and by carrying an account for you we agree, that except as inconsistent with the foregoing sentence, *all controversies which may arise between you and us concerning any transaction or the construction, performance or breach of this or any other agreement between you and us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration* in accordance with the rules then in effect, of the National Association of Securities Dealers, Inc. as you may elect. If you do not make such election by registered mail addressed to us at our main office within five days after demand by us that you make such election, then we may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof." (Italics added.)

Respondents filed no opposing declarations. On December 18, 1991, the superior court determined that respondents had entered into the client agreement but denied Sutro's motion because "there's no explanation or agreement which spells out the relationship between Sutro and Tucker Anthony."

■ On appeal, the interpretation of the arbitration agreement is subject to de novo review. (*Spellman* v. *Securities, Annuities & Ins.* (1992) 8 Cal.App.4th 452, 457 [10 Cal.Rptr.2d 427]; *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19, 28 [136 Cal.Rptr. 378].)

■ In California, arbitration is strongly favored as a speedy and inexpensive method of dispute resolution. (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 322 [197 Cal.Rptr. 581, 673 P.2d 251].) This is especially the case, where, as here, the arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.). (*Rice* v. *Dean Witter Reynolds, Inc.* (1991) 235 Cal.App.3d 1016, 1023 [1 Cal.Rptr.2d 265]; *Rowland* v. *PaineWebber Inc.* (1992) 4 Cal.App.4th 279, 284 [6 Cal.Rptr.2d 20].) "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. . . ." (*Moses H. Cone Hospital* v. *Mercury Constr.* (1983) 460 U.S. 1, 24-25 [74 L.Ed.2d 765, 785-786, 103 S.Ct. 927]; *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street, supra,* 35 Cal.3d 312, 323.)

■ Respondents, like other Sutro clients, were bound by the provisions of the client agreement regardless of whether they read it or were aware of the arbitration clause when they signed the document. (*Chan* v. *Drexel Burnham Lambert Inc.* (1986) 178 Cal.App.3d 632, 641 [223 Cal.Rptr. 838].) This is so because the Federal Arbitration Act preempts California law governing the validity of the arbitration clause. (*Van Luven* v. *Rooney, Pace Inc., supra,* 195 Cal.App.3d 1201, 1205.) "In the context of adhesion contracts, the courts have held that the inclusion of an arbitration provision is not per se unconscionable, particularly in a commercial transaction. [Citation.]" (*Strotz* v. *Dean Witter Reynolds, Inc.* (1990) 223 Cal.App.3d 208, 216 [272 Cal.Rptr. 680].)

■ Here, the threshold issue is whether Sutro could enforce the arbitration clause as a third party beneficiary even though its name does not appear in the client agreement. *Van Luven* v. *Rooney, Pace Inc., supra,* 195 Cal.App.3d 1201 is the only reported California case to discuss the issue. There, the court held that a successor introducing broker was not a third-party beneficiary to the clearing broker agreement. It reasoned that "an

introducing broker who fails to obtain its own written customer agreement cannot enforce that of a broker operating in a completely different capacity . . . especially where, as here, the introducing broker's relationship with the plaintiff did not even exist at the time the agreement was executed." (*Id*, at pp. 1207-1208.) In footnote 2 of the opinion, the court noted that the broker could have enforced the agreement had there been "broader language in the arbitration clause, or some other appropriate evidence . . . ." (*Ibid.*)

In contrast, Sutro's broker relationship with respondents was established before the client agreement was executed. It was undisputed that Tucker Anthony carried respondents' accounts based on a clearing broker arrangement with Sutro. Moreover, paragraph 8 of the client agreement states that the introducing broker (Sutro) has authorized Tucker Anthony "to enter into this Agreement with you on their [Sutro's] behalf and the terms and conditions hereof, including the arbitration provision contained in paragraph 9, shall be applicable to all matters between such broker [Sutro] and you."[2]

The client agreement further recites that "[t]his Agreement shall be deemed to have been made in the State of New York and shall be construed . . . in accordance with the laws of the State of New York." (Par. 15.) Under New York law, a nonsignator may, as a third party beneficiary, enforce the arbitration agreement if the parties so intended. (*Creative Securities Corp.* v. *Bear Stearns & Co.* (S.D.N.Y. 1987) 671 F.Supp. 961, 965; *McPheeters* v. *McGinn, Smith and Co., Inc.* (2d Cir. 1992) 953 F.2d 771, 772-773.) Absent extrinsic evidence to the contrary, a court must independently review the terms of the agreement to determine the intended scope of the arbitration clause. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 864-866 [44 Cal.Rptr. 767, 402 P.2d 839]; Civ. Code, §§ 1639-1647, Code Civ. Proc., §§ 1856, 1858.)

Respondents, however, contend that Sutro cannot be a third party beneficiary unless it was specifically named in the client agreement. There is no such requirement. (*Kaiser Engineers, Inc.* v. *Grinnell*

---

[2]Paragraph 8 is entitled "INTRODUCED ACCOUNTS" and states: "If we carry your account as clearing broker by arrangement with another broker through whose courtesy your account has been introduced, then unless we receive from you a written notice to the contrary we shall accept from such other broker, without any inquiry or investigation by it (i) orders for the purchase or sale in account of securities and other property on margin or otherwise, and (ii) any other instructions concerning said account. You understand that we shall bear no responsibility or liability to you for any acts or omissions of such other broker, its officers, employees or agents. Any such broker has authorized us to enter into this Agreement with you on their behalf and the terms and conditions hereof, including the arbitration provision contained in paragraph 9, shall be applicable to all matters between such broker and you. *Each reference to "we" or "us" in paragraph 9 shall be understood to include any such broker.*" (Italics added.)

*Fire Protection Systems Co., Inc.* (1985) 173 Cal.App.3d 1050, 1055 [219 Cal.Rptr. 626]; *Steve Schmidt & Co.* v. *Berry* (1986) 183 Cal.App.3d 1299, 1313 [228 Cal.Rptr. 689].)[3]

Courts that have analyzed the problem of brokerage agreements have held that the introducing broker need not be named in the agreement. (*Cauble* v. *Mabon Nugent & Co.* (S.D.N.Y. 1984) 594 F.Supp. 985, 990-992; *Citizens and Southern Securities Corp.* v. *Braten* (S.D.N.Y. 1990) 733 F.Supp. 655, 665; *Ziegler* v. *Whale Securities Co., L.P.* (N.D.Ind. 1992) 786 F.Supp. 739, 743; *Nesslage* v. *York Securities, Inc.* (8th Cir. 1987) 823 F.2d 231, 233.) Other courts, however, have held to the contrary based on the terms of the particular agreement and circumstances surrounding its execution. (*Ahn* v. *Rooney, Pace Inc.* (S.D.N.Y. 1985) 624 F.Supp. 368, 370-371; *Antinoph* v. *Laverell Reynolds Securities, Inc.* (E.D.Pa. 1989) 703 F.Supp. 1185, 1191; *O'Connor* v. *R.F. Lafferty & Co., Inc.* (10th Cir. 1992) 965 F.2d 893, 902.)

Each case is to be decided on its facts and requires that a court scrutinize the language in the closing broker's agreement to determine whether it selectively includes or excludes the introducing broker from the arbitration provision. (*Mowbray* v. *Moseley, Hallgarten, Estabrook & Weeden, Inc.* (1st Cir. 1986) 795 F.2d 1111, 1117-1118; *Conway* v. *Icahn & Co., Inc.* (S.D.N.Y. 1990) 787 F.Supp. 340, 344; *Church* v. *Gruntal & Co., Inc.* (S.D.N.Y. 1988) 698 F.Supp. 465, 466-467.)

We conclude that the Sutro cover letter and reference to "Introduced Accounts" in the client agreement adequately explained the dual-broker relationship between Sutro and Tucker Anthony. Since the agreement was required to service respondents' accounts, it necessarily follows that Sutro had a contractual right to arbitrate any dispute regarding management of the accounts. We therefore hold that Sutro was a third party beneficiary to the client agreement and entitled to arbitrate.

Respondents have raised two ancillary issues. First, they assert that the superior court denied the December 18, 1991, motion based on the factual finding that the client agreement was never signed and had been "manufactured." We disagree. Respondents filed no opposing declarations challenging the authenticity of the signatures or the documents. At the hearing on the second petition to compel arbitration, the superior court ruled that respondents "had a client agreement with Tucker Anthony."

---

[3]At oral argument, respondents forcefully argued that there was no consideration provided by Sutro for this subsequent agreement. However, a third party beneficiary is not required to supply any consideration to enforce the terms of an agreement made for its benefit. (Civ. Code, § 1559; *Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031, 1044 [143 Cal.Rptr. 415].)

█ Respondents also argue that their complaints, which allege fraud in the inception of the contract, removes the matter from arbitration altogether. The argument is without merit. "Under *Prima Paint* [*Prima Paint* v. *Flood & Conklin* (1967) 388 U.S. 395 (18 L.Ed.2d 1270, 87 S.Ct. 1801)], a court must not remove from arbitration substantive challenges to the underlying contract unless there is an independent challenge to the arbitration clause itself. [Citation.]" (*Rowland* v. *PaineWebber Inc.*, *supra*, 4 Cal.App.4th 279, 285.)

Here, the client agreement was mailed to respondents after the investment accounts had been opened. No facts are alleged that Sutro fraudulently induced respondents to sign the clearing broker agreements. Given the nature and substance of respondents' pleadings, "claims of fraud in the inducement of the contract (as distinguished from claims of fraud directed to the arbitration clause itself) will be deemed subject to arbitration. . . ." (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street*, *supra*, 35 Cal.3d 312, 323.)

The order denying Sutro's petition to compel arbitration is reversed. Respondents to pay costs on appeal.

Stone (S. J.), P. J., and Gilbert, J., concurred.