[No. D047756. Fourth Dist., Div. One. July 26, 2007.]

RON SMITH, Plaintiff and Respondent, v.
MICROSKILLS SAN DIEGO L.P., Defendant and Appellant.

894

COUNSEL

Duane Morris, Keith Zakarin and Edward M. Cramp for Defendant and Appellant.

Law Offices of Douglas J. Campion and Douglas J. Campion for Plaintiff and Respondent.

OPINION

BENKE, J.—The arbitration provisions of a student loan agreement do not apply to claims against a school which are entirely unrelated to the terms or enforceability of the loan. In particular, the reference in an arbitration clause of a student loan agreement to "relationships which result from" the loan agreement does not include the borrower's relationship with his or her school. Accordingly, we affirm the trial court's order denying the defendant school's petition to arbitrate the plaintiff student's statutory claims.

FACTUAL AND PROCEDURAL BACKGROUND

In the spring of 2004 plaintiff and respondent Ron Smith attended classes at a postsecondary vocational institution owned and operated by defendant and appellant Microskills San Diego L.P. (Microskills). Smith paid for a

portion of his $19,995 tuition by borrowing funds from Sallie Mae, an educational lender. The note Smith executed in favor of Sallie Mae contained an arbitration provision which covered "any claim, dispute or controversy . . . arising from or relating to this Note or my application for a loan or advertisements, promotions or oral or written statements related to this Note or the program under which such a loan is or would be made, the relationships which result from this Note (including to the full extent permitted by law, relationships with third parties who are note signatories of this Note) or the validity, enforceability or scope of this Arbitration Provision or the entire Note (collectively, 'Claim')."

In November 2004 another Microskills student, Paul Gilchrist, filed a class action lawsuit against Microskills. The class action complaint alleged Microskills made a number of misrepresentations in order to induce students to enroll in its classes and that the misrepresentations gave rise to liability under the unfair competition law (UCL), Business and Professions Code section 17200 et seq. Because Gilchrist could not show he had suffered any actual harm as required by amendments made to the UCL,[1] in June 2005 Smith filed a first amended complaint. In addition to substituting Smith as the representative plaintiff,[2] the amended complaint added allegations that Microskills had violated disclosure provisions of the Education Code which govern vocational institutions. If established, the violations of the Education Code would entitle students to refunds and civil penalties.

Microskills's demurrer to the amended complaint was overruled in September 2005. Thereafter, Microskills moved to compel arbitration of its claims. Microskills argued it was a third party beneficiary of the arbitration provisions of the Sallie Mae note and that in any event the scope of the arbitration provisions should be decided in the first instance by an arbitrator. The trial court denied Microskills's motion. The trial court found Microskills was not a party to the note and not a third party beneficiary of the note and hence did not have standing to assert the arbitration provisions of the note. The trial court further found the statutory claims Smith asserted were not the type of claims covered by the arbitration provisions of the note. Microskills filed a timely notice of appeal.[3]

---

[1] The amendments were adopted by the voters on November 2, 2004, as Proposition 64.

[2] See *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 243–244 [46 Cal.Rptr.3d 66, 138 P.3d 214].

[3] After filing an opening brief, Microskills's counsel moved to withdraw and we granted counsel's motion. Microskills has not retained new counsel and no further appearances have been made on its behalf. "The effect of withdrawal is to leave the corporation without representation and without the ability to practice self-representation. For the uncooperative corporate client who has not been willing to bring in new counsel, granting of the withdrawal motion will put extreme pressure on it to obtain new counsel of record for should it fail to do

## DISCUSSION

### I

An "order denying a petition to compel arbitration, like any other judgment or order of a lower court, is presumed to be correct, and all intendments and presumptions are indulged to support the order on matters as to which the record is silent." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88 [7 Cal.Rptr.3d 267].) Nonetheless, where, as here, the trial court determined questions of law, to wit: whether Microskills was a party to the arbitration agreement and whether the arbitration covered Smith's statutory claims, we review the trial court's determinations de novo. (See *Valley Casework, Inc. v. Comfort Construction, Inc.* (1999) 76 Cal.App.4th 1013, 1017 [90 Cal.Rptr.2d 779].)

### II

■ "Although California has a strong policy favoring arbitration [citations], our courts also recognize that the right to pursue claims in a judicial forum is a substantial right and one not lightly to be deemed waived. [Citations.] Because the parties to an arbitration clause surrender this substantial right, the general policy favoring arbitration cannot replace an agreement to arbitrate. [Citations.] Thus, the right to compel arbitration depends upon the contract between the parties, [citations], and a party can be compelled to submit a dispute to arbitration only where he has agreed in writing to do so. [Citation.]" (*Marsch v. Williams* (1994) 23 Cal.App.4th 250, 254–255 [28 Cal.Rptr.2d 398].) Thus, as Smith argues, in general a nonsignatory to an arbitration agreement, such as Microskills, cannot enforce it. (See *Van Luven v. Rooney Pace, Inc.* (1987) 195 Cal.App.3d 1201, 1205 [241 Cal.Rptr. 248]; *Baker v. Birnbaum* (1988) 202 Cal.App.3d 288, 291 [248 Cal.Rptr. 336].)

■ Admittedly, "[t]here are exceptions to the general rule that a nonsignatory to an agreement cannot be compelled to arbitrate and cannot invoke an agreement to arbitrate, without being a party to the arbitration agreement. [Citation.] A nonsignatory to an agreement to arbitrate may be required to arbitrate, and may invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and

so it risks forfeiture of its rights through non-representation." (*Ferruzzo v. Superior Court* (1980) 104 Cal.App.3d 501, 504 [163 Cal.Rptr. 573].)

one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory. [Citation.]" (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 765 [28 Cal.Rptr.3d 752]; accord, *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 76 [100 Cal.Rptr.2d 683]; *County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 245 [54 Cal.Rptr.2d 628].) Thus where so-called "introducing" brokers have been clearly identified as agents of "clearing" brokers, the "introducing" brokers have been permitted to assert arbitration clauses in the "clearing" brokers' agreements in disputes with the "clearing" brokers' customers. (See *Macaulay v. Norlander* (1992) 12 Cal.App.4th 1, 4 [15 Cal.Rptr.2d 204]; compare *Van Luven v. Rooney Pace, Inc., supra,* 195 Cal.App.3d at p. 1205; *Arista Films, Inc. v. Gilford Securities, Inc.* (1996) 43 Cal.App.4th 495, 500–501 [51 Cal.Rptr.2d 35].) Similarly, where a patient has signed an arbitration agreement with a health care provider, the patient's spouse and heirs have been bound by the arbitration clause in actions growing out of the health care provider's treatment of the patient. (See *County of Contra Costa v. Kaiser Foundation Health Plan, Inc., supra,* 47 Cal.App.4th at pp. 245–246.)

Here, there is nothing in the record which suggests that in providing the vocational training which is the subject of Smith's complaint, Microskills acted as Sallie Mae's agent such that there is any equitable reason to give Microskills the benefit of the arbitration clause in the Sallie Mae notes. Although it is true Microskills provided the Sallie Mae forms Smith and the other students signed and received from Sallie Mae the proceeds of the students' loans, Smith's complaint is not in any fashion based upon this activity or on the students' obligation to Sallie Mae. Nothing in Smith's complaint exposes Sallie Mae to liability, challenges Sallie Mae's rights under the notes, or is based upon Microskills's loan processing activity. Rather, as Smith points out, his complaint is based on alleged common law and statutory obligations which are solely Microskills's obligations as an educational institution and foreign to Sallie Mae's role as a lender. Microskills has no more equitable right to the benefit of Sallie Mae's arbitration clause in resolving Smith's claims than it would have to benefit from an arbitration clause which appeared in a student's agreement with a credit card provider if, instead of Sallie Mae, the student used a credit card to finance his or her training. In short, because the means by which a student decided to finance his or her education is unrelated to Microskills's obligations to its students under the UCL and the Education Code, equity does not provide Microskills with the benefit of the financing mechanism chosen by the student.

■ Largely for the same reasons, Microskills cannot establish that it is a third party beneficiary of the Sallie Mae notes. Civil Code section 1559 provides "[a] contract, made expressly for the benefit of a third person, may be enforced by him [or her] at any time before the parties thereto rescind it." "The contract need not be *exclusively* for the benefit of the third party, i.e., he or she need not be the sole or the primary beneficiary." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 699, p. 786.) "Insofar as intent to benefit a third person is important in determining his [or her] right to bring an action under a contract, *it is sufficient that the promisor must have understood that the promisee had such intent.*" (*Lucas v. Hamm* (1961) 56 Cal.2d 583, 591 [15 Cal.Rptr. 821, 364 P.2d 685].) The term "expressly" in Civil Code section 1559, however, means " 'in an express manner; in direct or unmistakable terms; explicitly; definitely; directly.' " (*City & County of San Francisco v. Western Air Lines, Inc.* (1962) 204 Cal.App.2d 105, 120 [22 Cal.Rptr. 216]; *Shell v. Schmidt* (1954) 126 Cal.App.2d 279, 290 [272 P.2d 82].)

Cases which have considered attempts by "introducing" stock brokers to employ arbitration clauses in contracts used by "clearing" brokers emphasize the necessity that a third party beneficiary be explicitly identified. In *Macaulay v. Norlander, supra,* 12 Cal.App.4th at page 4, the court found an introducing broker had standing, as a third party beneficiary, to enforce an arbitration agreement entered into between a clearing broker and a stock investor. However, the language of the agreement was unambiguous. The agreement stated: "[T]he introducing broker (Sutro) has authorized Tucker Anthony [the clearing broker] 'to enter into this Agreement with you on their [Sutro's] behalf and the terms and conditions hereof, including the arbitration provision contained in paragraph 9, shall be applicable to all matters between such broker [Sutro] and you.' " (*Id.,* at p. 7, fn. omitted.) Given this clear language, the court in *Macaulay* held "Sutro was a third party beneficiary to the client agreement and entitled to arbitrate." (*Id.,* at p. 8.) Because the agreement expressly extended the arbitration provision to the introducing broker, it was not material that the agreement did not set out the name of the introducing broker. (*Id.,* at pp. 7–8.)

In contrast, in *Arista Films, Inc. v. Gilford Securities, Inc., supra,* 43 Cal.App.4th at page 502, the agreement merely stated: " 'This contract shall be governed by the laws of the State of New York, *and shall inure to the benefit of your successors and assigns,* and shall be binding on the under-signed, my heirs, executors, administrators and assigns.' . . ." Given this language, the court had no difficulty in rejecting the introducing brokers'

contention that it was a third party: "[T]he arbitration agreement, by its terms, inured to the benefit of Prudential, as well as its successors and assignees. Gilford, the introducing broker, was neither Prudential's successor in interest nor its assignee.

"Further, unlike the client agreement in *Macaulay*, which expressly extended the arbitration provision to the introducing broker *(Macaulay v. Norlander, supra*, 12 Cal.App.4th at p. 7), the instant agreement failed to manifest any intent to confer such benefit upon the introducing broker." *(Arista Films, Inc. v. Gilford Securities, Inc., supra*, 43 Cal.App.4th at p. 502, fn. omitted.)

Here, there is nothing in the notes which would have conveyed to students that Microskills was an intended third party beneficiary of the arbitration provisions. Because there is no obvious reason an independent lender such as Sallie Mae would have an interest in how Microskills resolves disputes over its educational obligations to its students, a provision which extended the arbitration clause in the notes to Microskills's obligations would be somewhat unexpected, especially in light of the fact that apparently nothing in Microskills's own contracts with the students requires arbitration. In this context, the notes cannot be interpreted as making Microskills a third party beneficiary.

As Smith points out, Microskills is identified in the note with particularity as the "school." The note states: *"In this Promissory Note ('Note'), the word 'I', 'me' and 'mine' mean the undersigned Borrower and Co-Borrower(s), unless the language specifically refers to only one or the other. 'You', 'your' and 'yours' means the Lender, its agents, and any subsequent holder of this Note, and the agents of such persons. 'Lender' refers to the Lender as identified on my Disclosure Statement.* **'School' means the school the Student is attending.** *'Student' is the person whose education costs will be paid for by this loan."* (Boldface italics added.) The note further provides that "if a dispute of any kind arises with respect to this Note or my application for a loan either you, I or third parties involved with a dispute *with you* can choose to have that dispute resolved by binding arbitration." (Italics added.) As Smith points out, under the literal meaning of these provisions the only third parties who are covered by the arbitration clause are third parties who have disputes which involve Sallie Mae or the note. This limitation is of course consistent with the likely expectations of a student that the note and its arbitration provisions would limited to disputes involving the note.

Admittedly, the arbitration clause itself states that it "covers any claim, dispute or controversy . . . arising from or relating to this Note or my application for a loan or . . . *the relationships which result from this Note* (including to the full extent permitted by applicable law, relationships with third parties who are not signatories of this Note)." (Italics added.) However, since students had independent and existing relationships with Microskills at the time they executed the notes, this clause standing by itself does not explicitly include Microskills. Moreover, read in the context of other provisions of the note which limit arbitration to claims related to the note, the reference "to relationships which arise from this Note" cannot be extended to a dispute with Microskills which is entirely unrelated to the note.

■ In sum, Microskills is not a signatory to the Sallie Mae note which contains the arbitration clause, and there is no basis upon which it can argue it is entitled to enforce that clause with respect to the claims Smith has made.

### III

■ The arbitration clause in the Sallie Mae note provides that it covers any dispute relating to "the validity, enforceability or scope of this Arbitration Provision." Microskills argues that in light of this provision its standing to demand arbitration should have been decided in the first instance by an arbitrator. We disagree.

" 'The determination of standing to arbitrate as a party to the contractual arbitration agreement is a question of law for the trial court in the first instance. [Citation.]' " (*City of Hope v. Bryan Cave, L.L.P.* (2002) 102 Cal.App.4th 1356, 1369 [126 Cal.Rptr.2d 283]; see also *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 171 [30 Cal.Rptr.3d 76, 113 P.3d 1100].) Although an arbitration provision might expressly provide that the question of standing to demand arbitration is itself arbitrable (see *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444, 451–452 [156 L.Ed.2d 414, 123 S.Ct. 2402]), here the reference to the "scope" of the agreement does not make the distinct question of standing arbitrable. In light of the general rule making standing a question for the court, a more explicit reference to standing is required.

## CONCLUSION

Because Microskills was not a party to the notes, it may not enforce the arbitration clause. Thus we affirm the trial court's order denying Microskills's motion without reaching the alternative grounds asserted by Smith.

Order affirmed. Respondent to recover his costs of appeal.

McConnell, P. J., and McIntyre, J., concurred.