Filed 8/19/20  Emerald Expositions v. Meeting Services Unlimited CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| EMERALD EXPOSITIONS, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MEETING SERVICES UNLIMITED, INC., <br><br> Defendant and Appellant. | D075998 <br><br><br> (Super. Ct. No. 37-2018-00024407-CU-BT-CTL) |


APPEAL from an order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Meylan Davitt Jain Arevian & Kim and Shaunt Toros Arevian, Vincent John Davitt; Valensi Rose and Stephen F. Moeller, Laurie Murphy for Defendant and Appellant.

Davis Wright Tremaine and Sean Michael Sullivan, Diana Palacios, Zana Bugaighis for Plaintiff and Respondent.

Meeting Services Unlimited, Inc. (MSU) appeals an order denying its petition to compel arbitration of its dispute with respondent Emerald Expositions, LLC (Emerald).  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*The CEDIA-MSU Agreement*

Emerald is the successor in interest of Custom Electronic Design and Installation Association (CEDIA). It operates tradeshows in various cities, including CEDIA Expositions held in San Diego, California and Denver, Colorado. In 2009, CEDIA entered into a contract with MSU, an Indiana corporation that coordinates and manages meetings, conventions, trade shows and special events, and offers registration and housing services. Under the CEDIA-MSU Agreement (at times "the Agreement"), CEDIA retained MSU to "perform all services and carry out the specified details," including "arrange as necessary, on behalf of [CEDIA and as its] agent, for the provision of services by third party suppliers to carry out various activities." Specifically, MSU agreed to manage hotel/housing services for the CEDIA Expositions.[1]

Under the CEDIA-MSU Agreement, MSU was compensated through a "project fee" that the hotels would pay in the form of room commissions.

---

[1] The original CEDIA-MSU Agreement was extended until 2020 by separate addenda that did not materially affect the Agreement's terms. The Agreement's "Services to Client" section outlines the duties MSU was required to perform, including "[p]rovide . . . a 1ist (in an agreed-upon data format) of the name, company (or affiliation) and address of all attendees to the Event (the 'Attendee List') for use in performance of this Agreement."

In the operative complaint, Emerald interprets the CEDIA-MSU Agreement to encompass MSU's duties of "customizing and maintaining a website for room sub-blocks and a 'personalized' phone and fax number for hotel reservations, accepting housing requests for the hotels via phone, fax, mail and a secured website, reviewing all aspects of the housing process with the hotels as defined by the Agreement, sending confirmation letters of housing to individuals and sub-blocks, confirming room reservations with the San Diego hotels, providing reports to Emerald on a regular basis, and managing and reserving suites and meeting room requests."

MSU was required to share 35 percent of the total room commissions with Emerald. MSU retained 65 percent of the total room commissions as payment for its services. In a section titled, "Additional Services," the Agreement provides: "In the event [CEDIA] requires MSU to provide services not contemplated by this Agreement or relating to anything other than Housing such as additional planning and management for the organization, [CEDIA] shall pay MSU no more than $100.00 per hour for the performance of such services. The actual hourly fee will be based on the assignment of the service and the rate associated with the person(s) assigned to complete the task."

The CEDIA-MSU Agreement in a section titled "Expenses and Charges," provides that "[f]rom the Hotel commissions received MSU will pay for all of its out-of-pocket expenses incurred in connection with the performance of its services," including all travel, transportation expenses and subsistence expenses while on travel, mileage, postage and telephone expenses.

The CEDIA-MSU Agreement's "Termination of Agreement" clause states in part: "Either party may terminate this Agreement . . . (ii) without cause upon sixty (60) days written notice to MSU[;] however, if [CEDIA] terminates this Agreement without cause, [CEDIA] shall pay MSU no more than $100.00 per hour (based on the rate associated with each person performing the completed tasks) for the hours worked and not paid by the portion of the Project Fee paid prior to termination, a termination fee of 25 [percent] of the original Project Fee and all expenses and charges incurred on behalf of [CEDIA] prior to such date, all within fifteen (15) days of invoice from MSU."

There is no arbitration provision in the CEDIA-MSU Agreement, which provides for litigation: "If MSU files suit to enforce any of the terms of this Agreement, MSU shall recover from [CEDIA] it's [*sic*] reasonable attorneys['] fees and expenses and [one and one-half percent] per month on any sums due MSU from the date payment was due until paid." The Agreement's integration clause states it is the "entire understanding and agreement" between the parties. The Agreement's choice of law provision specifies that its interpretation is governed by Indiana Law.

*The GSAs' Terms*[2]

MSU acted as an "agent on record," on behalf of CEDIA, which entered into General Sales Agreements ("GSA's") with 42 hotels for the purpose of "securing sleeping rooms and related accommodations as specified in this contract at the [hotel's] property and related facilities." MSU was not a party to the GSA's, but as agent it was one of the "authorized representatives" allowed "to make changes or modifications to this [GSA] or respond to inquiries regarding the property and related facilities for the [] Hotel or the meeting's program, activities, events and functions." The GSA's specify that the hotels must pay a commission made payable to MSU "in the amount of 10 [percent] of the room rate paid per room, per night, by any guests attributed to [CEDIA's] room block." The GSA's state: "The commission due to [MSU] under this [a]greement is not subject to cancellation or modification without the prior written consent of [MSU]." Additionally, the hotels must pay MSU a rebate per room per night by check made payable to CEDIA.

---

2    MSU claims the GSA's are practically identical. Following MSU's practice in its opening brief, we rely on the terms of a representative GSA between CEDIA and a San Diego hotel.

The GSA's arbitration clause gives the parties 30 days to mediate disputes; if that fails, "any claim, dispute or controversy arising out of or relating to this Agreement, or the alleged breach or termination thereof, will be settled by arbitration . . . . The parties acknowledge that by agreeing to arbitrate disputes, each party is waiving its right to a jury trial." The GSA's integration clause states the GSA and its attachments "contain[ ] the entire agreement between [the hotel] and CEDIA with respect to its subject matter and may be amended only by written agreement between both parties." If the two parties cannot agree on an arbitrator, each party will select an arbitrator and those two will select a third arbitrator to resolve disputes as a panel. The parties will provide "each other" requested documents and records in order to "minimize the expense and inconvenience of both parties."

*Emerald's Complaint*

Pursuant to the CEDIA-MSU Agreement's termination clause, Emerald terminated the Agreement and replaced MSU as agent. Emerald commenced litigation with MSU. In the operative first amended complaint, Emerald asserts causes of action for (1) breach of the CEDIA-MSU Agreement and (2) intentional interference with contractual relations regarding the San Diego and Denver GSA's. Emerald also sought judicial declarations that the CEDIA-MSU Agreement's "termination provision defines the entirety of any amounts due to MSU upon Emerald's termination of the Agreement"; and as to the San Diego and Denver GSA's, that because Emerald terminated the CEDIA-MSU Agreement, MSU's role as agent on record also terminated; therefore, MSU has no right to hotel commissions under the GSA's.

*Petition to Compel Arbitration*

In petitioning for arbitration under the GSA's arbitration clause, MSU argued that the gravamen of its dispute is that Emerald owed it commissions

under the GSA's.[3]  In opposition, Emerald argued the dispute did not arise under the GSA's, but instead from the termination of the CEDIA-MSU Agreement.  Emerald also argued that as MSU in its moving papers had not raised any right to arbitration as a third party beneficiary, as an agent, and under principles of equitable estoppel, MSU was barred from raising those issues in reply.  MSU in reply claimed it had standing to petition for arbitration based on its status as a third party beneficiary and agent under the GSA**'s**.  It did not address the equitable estoppel issue.

Following a hearing, the court denied the petition, finding MSU was not a signatory to the GSA's, which specify that the only two parties are the respective hotels and CEDIA.  The court interpreted the GSA under California law because it does not contain a choice of law provision.  The court found that MSU failed to show that the parties entered into the GSA's for MSU's benefit.  The court further stated: "Even if MSU were a third party beneficiary, it must establish that the arbitration agreement applies to the controversy. . . .  It is true that the GSA states the hotels are to pay commissions directly to MSU.  However, Emerald is not suing the hotels.  The fundamental dispute between Emerald and MSU over MSU's right to commissions ultimately arises out of the CEDIA-MSU Agreement (which does not contain an [arbitration] agreement provision).  The GSA requires the hotel to pay a commission, and specifies how the commission is to paid (i.e.,

---

3     MSU also argued that the CEDIA-MSU Agreement and the GSA's should be considered together under Civil Code section 1642, which provides that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."  The court rejected that claim, explaining the CEDIA-MSU Agreement and the GSA's involved different pairs of parties.  MSU does not challenge that ruling on appeal.

directly to the MSU), but it is the CEDIA-MSU Agreement which governs MSU's right to a share of the commission in the first place."

DISCUSSION

MSU contends the parties' dispute is based on their disagreement regarding Emerald's obligation to pay MSU a termination fee and commissions under the CEDIA-MSU Agreement's termination clause.[4] MSU concedes "[t]he trial court correctly identified that 'the fundamental dispute between Emerald and MSU' is 'over MSU's right to commissions.'" However, MSU again contends it has standing to invoke the GSA's arbitration clause as a third party beneficiary, as CEDIA's agent, and under equitable estoppel principles. MSU points out the GSA's mention it as an "agent on record," the hotels agreed to pay it a commission and a rebate, and the GSA's section on commissions may not be cancelled or modified without MSU's prior written consent.

---

[4] MSU explains: "In December 2017, Emerald gave MSU 60 days' notice of termination without cause of the [CEDIA-MSU] Agreement. . . . In that same notice, Emerald offered MSU a modest one-time payment in lieu of the termination fee owed MSU under the [CEDIA-MSU] Agreement and the commissions owed MSU under the remaining San Diego and Denver GSA's to be performed. . . . Emerald claimed MSU is entitled only to a termination fee under the [CEDIA-MSU] Agreement and that post-termination MSU had no right to commissions under the GSA's it procured for upcoming CEDIA trade shows. Emerald claimed it can keep for itself the commissions earned by MSU for procuring 42 GSA's in San Diego and Denver. . . . [¶] MSU rejected Emerald's position. It demanded payment of the full termination fee under the [CEDIA-MSU] Agreement and reaffirmed its right to the commissions for the remaining GSA's MSU procured. . . . MSU also notified the hotel counterparties to the San Diego and Denver GSA's that it was not waiving or relinquishing any rights to commissions under the GSA's."

A. *Applicable Law*

A party to an arbitration agreement may petition the trial court to compel another party to arbitrate a dispute that falls within the scope of the parties' agreement. (Code Civ. Proc., § 1281.2; *Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 15.) While public policy favors contractual arbitration as a means of resolving disputes, " ' " 'there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate.' " ' " (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352.)

"Whether an agreement to arbitrate exists is a threshold issue of contract formation and state contract law." (*Avila v Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 843.) "The petitioner bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence." (*Segal v. Silberstein* (2007) 156 Cal.App.4th 627, 633.) To determine whether the parties' dispute falls within the scope of an arbitration agreement, we apply general principles of contract law. (*Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 541.) We try to give effect to the parties' intentions by looking to the usual and ordinary meaning of the contractual language and the circumstances under which the contract was formed. (*Bono v. David* (2007) 147 Cal.App.4th 1055, 1063.)

Someone who is not a party to a contractual arbitration provision generally lacks standing to enforce it. (See *Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 837, ["[t]he general rule is that only a party to an arbitration agreement may enforce it"]; *Smith v. Microskills San Diego L.P.* (2007) 153 Cal.App.4th 892, 896-900 [nonsignatory to a promissory note containing an arbitration provision lacks

8

standing to compel arbitration]; see generally *CAZA Drilling* (*California),
Inc. v. TEG Oil & Gas U.S.A., Inc.* (2006) 142 Cal.App.4th 453, 465; *Jones v.
Aetna Casualty & Surety Co.* (1994) 26 Cal.App.4th 1717, 1722.)

Third parties may enforce a contract with an arbitration provision,
however, where they are intended third party beneficiaries or are assigned
rights under the contract. (*Smith v. Microskills San Diego L.P.*, *supra,* 153
Cal.App.4th at pp. 898-900, see *Applera Corp. v. MP Biomedicals, LLC* (2009)
173 Cal.App.4th 769, 786-787 [assignee].) The rules are the same for third
parties who are agents of a party to a contract. "[A]n agent for a party to a
contract not made with or in the name of the agent is not a real party in
interest with standing to sue on the contract." (*Powers v. Ashton* (1975) 45
Cal.App.3d 783, 789.)

"Whether an arbitration agreement applies to a controversy is a
question of law to which the appellate court applies its independent judgment
where no conflicting extrinsic evidence in aid of the interpretation was
introduced in the trial court." (*Brookwood v. Bank of America* (1996) 45
Cal.App.4th 1667, 1670; see also *Brown v. Wells Fargo Bank, N.A.* (2008) 168
Cal.App.4th 938, 953.) However, if there are material facts in dispute, we
must accept the trial court's resolution of such disputed facts when supported
by substantial evidence. (*Engineers & Architects Assn. v. Community
Development Dept.* (1994) 30 Cal.App.4th 644, 653.) We agree with the
parties that our review is de novo because there is no factual dispute and
resolution of the issues requires only interpretation of the contractual
language of the CEDIA-MSU Agreement and the GSA's.

B. *Analysis*

We conclude the CEDIA-MSU Agreement governs the parties' dispute.
MSU acknowledges the dispute concerns MSU's right to termination fees and

commissions. The Agreement sets forth in detail how MSU is to be compensated upon termination of the Agreement, and also stipulates which expenses MSU may deduct from the commissions. The Agreement's integration clause specifies the Agreement is the parties' entire understanding on this subject matter.

The CEDIA-MSU Agreement does not contain an arbitration clause. Rather, it contemplates the parties will resolve their disputes through litigation as it states that if "MSU files suit to enforce any of the terms of this Agreement," it will be entitled to recover reasonable attorney fees. "Arbitration is consensual in nature. The fundamental assumption of arbitration is that it may be invoked as an alternative to the settlement of disputes by means other than the judicial process solely because all parties have chosen to arbitrate them. [Citations.] Even the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement." (*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 244-245.) Accordingly, the court did not err by denying MSU's petition to compel arbitration.

Having concluded that the CEDIA-MSU Agreement applies to this dispute, we reject MSU's claims that this dispute arose out of the GSA's or that MSU was a third party beneficiary to them for purposes of this dispute. The GSA's specifically state their purpose is for CEDIA to secure hotel rooms for its events. CEDIA and the hotels nowhere mention in the GSA's that their objective is to resolve MSU's disputes regarding the CEDIA-MSU Agreement or rights to commission upon its termination, which is the gravamen of this dispute. This lawsuit relates to actions after MSU's contract was terminated. The GSA's do not address the apportionment of

commissions between MSU and Emerald, a topic the CEDIA-MSU Agreement addresses in detail.  Particularly because the hotels that signed the separate GSA's are not parties to the lawsuit, this dispute more properly arises from the CEDIA-MSU Agreement.

MSU argues that under the "procuring cause doctrine," as CEDIA's agent, it is entitled to a commission because it procured the hotel contracts before Emerald replaced it as agent.  But Emerald correctly points out that, under Indiana law, which governs the CEDIA-MSU Agreement, parties can alter the procuring agent doctrine by a written agreement.  A court interpreting Indiana law stated: "As a general rule, a person employed on a commission basis to solicit sales orders is entitled to his commission when the order is accepted by his employer.  The entitlement to commissions is not affected by the fact that payment for those orders may be delayed until after they have been shipped.  [Citations]  This general rule may be altered by a written agreement by the parties or by the conduct of the parties which clearly demonstrates a different compensation scheme."  (*Vector Engineering & Mfg. Corp. v. Pequet* (Ind. Ct. App. 1982) 431 N.E.2d 503, 505.)

MSU contends Emerald should be equitably estopped from opposing arbitration because Emerald's claims presuppose the existence of and relate to the GSA's.  Emerald correctly points out that MSU did not raise this issue in the trial court.  When a legal argument was not raised in the trial court, we have discretion to consider it where, as here, it involves a legal question applied to undisputed facts.  (*Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1287-1288.)  We will exercise that discretion here.

Under the equitable estoppel doctrine, "a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately

11

founded in and intertwined' with the underlying contract obligations." (*Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 271-272.) "This requirement comports with, and indeed derives from, the very purposes of the doctrine: to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement." (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 221.) The doctrine focuses on the "nature of the claims asserted by the plaintiff against the nonsignatory defendant." (*Boucher v. Alliance Title Co., Inc., supra,* 127 Cal.App.4th at p. 272.) "Claims that rely upon, make reference to, or are intertwined with claims under the subject contract are arbitrable." (*Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1287; see also *Goldman v. KPMG, LLP, supra,* 173 Cal.App.4th at pp. 229-230 ["Because equitable estoppel applies only if plaintiffs' claims against the nonsignatory are dependent upon, or inextricably bound up with, the obligations imposed by the contract plaintiff has signed with the signatory defendant, we examine the facts alleged in the complaints."]; *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1713 ["Courts applying [the doctrine] against a signatory have 'looked to the relationships of persons, wrongs and issues, in particular whether the claims that the nonsignatory sought to arbitrate were " ' "intimately founded in and intertwined with the underlying contract obligations." ' " ' "].)

Again, as the parties concede that the gravamen of their dispute is MSU's termination and the apportionment of commissions, we conclude it is governed by the CEDIA-MSU Agreement, based on the allegations in Emerald's first amended complaint. Specifically, Emerald alleges MSU breached the Agreement, and Emerald seeks a declaration regarding the

12

parties' rights under it. The other cause of action addressing MSU's alleged interference with the GSA's and Emerald's request for declaratory relief specifically relate to matters occurring after Emerald terminated the CEDIA-MSU Agreement and MSU was no longer Emerald's agent. Therefore, the complaint's allegations require resolution under the CEDIA- MSU Agreement, as they are not so intimately intertwined with the GSA's that it would be unjust to MSU for them to be adjudicated in a court of law instead of in the arbitral forum.

On the other hand, it would not be equitable to Emerald and MSU to require them to arbitrate a dispute when they elected not to include an arbitration requirement in the CEDIA-MSU Agreement. As the court stated in *Goldman v. KPMG, LLP, supra,* 173 Cal.App.4th at page 235, "the application of an equitable doctrine to require arbitration between parties who have not agreed to arbitrate is entirely inappropriate in this case. One may recall that the 'linchpin' for equitable estoppel 'is equity-fairness' [citation], and that the application of the doctrine is fact-specific. [Citation.] As we have seen, unless a party to an arbitration agreement has used the substantive terms of that agreement as the foundation for his claims against a nonsignatory, there is no reason in equity why he should be forced to arbitrate his claims against the nonsignatory. This is especially so where that party actually has a written agreement with the defendant containing no arbitration clause. In short, despite the ubiquity of arbitration clauses in agreements for professional services, [petitioner] apparently did not wish to use arbitration to decide disputes—such as this one . . . . To allow [petitioner] nonetheless to assert the right to arbitrate under these circumstances would further denude the doctrine of equitable estoppel of its essence: equity." In short, we conclude that MSU seeks to escape from its obligations under the

CEDIA-MSU Agreement to resolve its disputes by litigation; it instead petitions for arbitration under 42 GSA's with separate hotels to which it was not a party.

## DISPOSITION

The order denying the petition to compel arbitration is affirmed. Emerald Expositions, LLC is awarded costs on appeal.

O'ROURKE, J.

WE CONCUR:

HALLER, Acting P. J.

AARON, J.