Filed 1/7/16  Burch v. Celtic Pubs CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANTHONY BURCH et al., | B261809 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC536641) |
| v. | |
| CELTIC PUBS, LLC et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Teresa Sanchez-Gordon.  Reversed and remanded.

No appearance for Plaintiffs and Respondents.

Greenburg Glusker Fields Claman & Machtinger, Ricardo P. Cestero, for Defendants and Appellants.

\* \* \* \* \* \*

The shareholders of a limited liability company (LLC) sued another shareholder and the LLC's manager. The defendants in that lawsuit moved to compel arbitration pursuant to an arbitration clause in the LLC's operating agreement. The trial court granted the motion as to the shareholders' individual claims, but denied the motion as to the shareholders' derivative claims on behalf of the LLC. We conclude that the court's refusal to compel arbitration of the LLC's claims was error, and reverse. Although we conclude that the pending bankruptcy of the LLC does not preclude its prosecution of a derivative action, we remand for the court to consider in the first instance whether the arbitration of that action should nonetheless be stayed pending the outcome of the sale of the LLC's assets in the bankruptcy proceeding because that sale may affect the power of the LLC to continue with its derivative action.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts[1]

This lawsuit is for "control of the heart and soul of Dublin's Irish Whiskey Tavern" (Dublin's), which is an "esteemed downtown Los Angeles restaurant and bar." Since at least 2012, Dublin's has been owned by plaintiff (and nominal defendant) Celtics Pubs, LLC (the LLC).

In 2012, defendant MB Entertainment Group, LLC (MB Entertainment) acquired a 36.335 percent interest in the LLC for $155,000. As part of this acquisition, the LLC's Operating Agreement was amended. The "Amended and Restated Operating Agreement for [the] LLC" (Operating Agreement) provides that the LLC was to be run by a manager, and grants MB Entertainment the right to select that manager as long as MB Entertainment owns more than 25 percent of the LLC. MB Entertainment appointed defendant Vincent Tapia (Tapia) as the LLC's manager.

More generally, the Operating Agreement "determines" "[t]he rights and liabilities of the [LLC's] Members." The Operating Agreement also provides, in pertinent part, that

---

[1]    We draw these facts from the operative First Amended Complaint.

"[t]he Managers and/or Members shall submit any dispute [involving "an irreconcilable difference of opinion between the Managers or the Members"] that cannot be resolved though non-binding mediation . . . and any other controversy, dispute or claim between any of the Managers and/or the Members arising out of, in connection with, or in relation to the formation, interpretation, performance or breach of this Agreement to binding arbitration . . . ." The Agreement listed the then-current "Members" as MB Entertainment as well as plaintiffs Ben Germono (Germono), Sally Harte (Harte), Ernest Moss (E. Moss), Mark Moss (M. Moss), Joel Regala (Regala), Charles Tover (Tover), and Dave Vij (Vij).[2] The Operating Agreement was signed by all of the above-named plaintiffs and by Tapia as "manager"; the LLC itself did not sign the Operating Agreement.

From September 2012 through February 2014, Tapia allegedly (1) used Dublin's cash and inventory for himself, including to buy cocaine, (2) ate Dublin's food without paying for it, (3) allowed his "property-flipping" businesses, defendants Blackwood Properties, Inc. (Blackwood Properties) and Blackwood Enterprises, Inc. (Blackwood Enterprises) to use Dublin's office space without paying rent, (4) diverted Dublin's revenue to a business in Mexico and to a competing business venture, (5) violated labor laws by using a Dublin's employee as his personal driver, (6) created a hostile working environment by sexually harassing a Dublin's employee and hiring a sexual partner to work at Dublin's, (7) jeopardized Dublin's liquor license by serving alcohol after 2 a.m., (8) declined to pay Dublin's vendors, and (9) refused to give the LLC's Members an accounting or access to the LLC's tax records.

## II.    Procedural History

In the operative First Amended Complaint filed February 2014, Germono, Harte, E. Moss, M. Moss, Regala, Tover, and Vij, along with LLC creditors Anthony Burch (Burch) and Mark Knight (Knight), sued MB Entertainment, Tapia, Blackwood

---

[2]    The Operating Agreement also named Eddie Earl Jones as a member, but he is not a party to this case.

Properties and Blackwood Enterprises. Critically, the individual plaintiffs brought this lawsuit "[d]erivatively, as Majority Members and on behalf of [the LLC]." Plaintiffs alleged claims for (1) an accounting (against the LLC and MB Entertainment), (2) breach of fiduciary duty (against Tapia), (3) unfair competition (against Tapia, Blackwood Properties and Blackwood Enterprises), (4) conversion (against Tapia, Blackwood Properties and Blackwood Enterprises), (5) corporate waste (against the LLC, MB Entertainment and Tapia), (6) declaratory and injunctive relief (against all of the defendants), (7) fraudulent transfer (against all of the defendants), (8) trespass (against Blackwood Properties and Blackwood Enterprises), and (9) unjust enrichment (Against Tapia, Blackwood Properties and Blackwood Enterprises).[3] Plaintiffs sought compensatory damages, punitive damages, an accounting, the removal of Tapia as manager, and an order voiding the 2012 acquisition.

In May 2014, MB Entertainment, Tapia and Blackwood Properties (collectively, defendants) moved to compel arbitration on the grounds that (1) the parties are subject to the arbitration clause in the Operating Agreement, and, in the alternative, (2) plaintiffs are equitably estopped from disputing the applicability of the arbitration clause contained in the Operating Agreement because their claims are based on that agreement.[4] Plaintiffs opposed the motion, in part on the ground that the LLC never signed the Operating Agreement and thus could not be bound by its arbitration clause.

At the December 2014 hearing on the motion, the trial court tentatively accepted plaintiffs' argument the LLC was not bound by an arbitration clause in an Operating Agreement it never signed, and reasoned that because plaintiffs "stand in the shoes of the [LLC]" "in the derivative causes of action," plaintiffs "cannot be compelled to arbitrate [their derivative] claims." The court took the matter under submission, but ultimately

---

[3] Plaintiffs also alleged a cause of action entitled "Derivative Action," but it contains no factual or legal allegations beyond those spelled out in other causes of action.

[4] Blackwood Enterprises did not join this motion; the record before us contains no information on the status of this party.

4

ordered arbitration of "[t]he individual causes of action," but not the "derivative causes of action"; instead, it stayed the derivative causes of action. The court did not address the issue of equitable estoppel.

MB Entertainment, Tapia and Blackwood Properties timely appealed.

## DISCUSSION

Defendants argue that the trial court erred in denying their motion to compel the claims brought on the LLC's behalf by the individual plaintiffs.

## I. Effect of the LLC's Bankruptcy Petition

After defendants filed this appeal, the LLC on April 27, 2015, filed for bankruptcy.[5] The filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . [¶] the commencement or continuation . . . of a judicial . . . action or proceeding *against the debtor*." (11 U.S.C. § 362(a)(1), italics added.) However, "the stay is inapplicable to superior court actions initiated by the debtor" and thus does not "prevent debtors from prosecuting actions against others." (*Shah v. Glendale Federal Bank* (1996) 44 Cal.App.4th 1371, 1375-1376, italics omitted; *Parker v. Bain (In re Parker)* (9th Cir. 1995) 68 F.3d 1131, 1138 (*Parker*) [automatic stay does not apply to "a claim by, not against, the debtor" because "its successful prosecution would 'inure to the benefit of the bankruptcy estate'"], quoting *Carley Capital Group v. Fireman's Fund Ins. Co.* (D.C. Cir. 1989) 889 F.2d 1126, 1127.) In determining whether an action is impacted by the automatic stay, "'multiple claim[s] and multiple party litigation must be disaggregated'"; in other words, "particular claims, counterclaims, cross claims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay.'" (*Parker*, at p. 1137, quoting *Maritime Electric Co. v. United Jersey Bank* (3d Cir. 1992) 959 F.2d 1194, 1204-1206.) Because, as we discuss in section II, their appeal involves the venue in which the LLC—that is, the debtor—should prosecute claims brought derivatively on its behalf, the LLC's derivative

---

[5] We take judicial notice of the bankruptcy court's file. (Evid. Code, §§ 459 & 452, subd. (d)(2) [authorizing judicial notice of "[r]ecords of . . . any court of record of the United States"].)

action and this appeal dealing with the same fall outside the bankruptcy stay. The LLC's status as a nominal defendant in the derivative action does not alter this conclusion. (*Walters v. First Tennessee Bank* (6th Cir. 1988) 855 F.2d 267, 270-271 [so holding].)

## II. Appellate Jurisdiction

Code of Civil Procedure section 1294 enumerates the five types of arbitration-related orders that may be appealed. (Code Civ. Proc., § 1294.) Among them is "[a]n order dismissing or denying a petition to compel arbitration." (§ 1294, subd. (a); *Hong v. CJ CGV America Holdings, Inc.* (2013) 222 Cal.App.4th 240, 248.) Absent from this list is an order *granting* a motion to compel arbitration. (*Muao v. Grosvenor Properties, Ltd.* (2002) 99 Cal.App.4th 1085, 1088; *Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 353 (*Wheeler*).) As a result, and except in "extraordinary circumstances" where relief by writ is warranted, a party who is ordered to arbitration ordinarily cannot litigate the correctness of that order until the party's appeal of the arbitration ruling. (*Wheeler*, at p. 353.) Any other rule, the courts have said, would "indefinitely delay the matter of arbitration," thereby defeating "'the purpose of the written agreement of the parties'" to arbitrate. (*Laufman v. Hall-Mack Co.* (1963) 215 Cal.App.2d 87, 88.)

The individual plaintiffs have brought their action, at least in part, as a derivative action on behalf of the LLC. A derivative action for an LLC is permitted. (*Paclink Communications International v. Superior Court* (2001) 90 Cal.App.4th 958, 963.) In such an action, as with all derivative actions, "[t]he causes of action do not belong to [the individual plaintiff], but to [the LLC]." (*Frederick v. First Union Securities, Inc.* (2002) 100 Cal.App.4th 694, 697 (*Frederick*).) Thus, the effect of the trial court's order in this case was to grant the motion to compel arbitration as to all of the causes of action brought by the individual plaintiffs, but to deny the motion as to all of the causes of action brought by the LLC. As to the LLC, which is all we have before us, the trial court's order is an "order . . . denying a petition to compel arbitration." (Code Civ. Proc., § 1294, subd. (a).) As such, it is appealable.

6

## III.    Merits

Defendants argue the trial court erred in denying their motion to compel the LLC to arbitrate its claims against them.  More specifically, they argue that (1) the LLC should be treated as a signatory to its own Operating Agreement, and (2) the LLC should in any event be equitably estopped from opposing arbitration.  Although there is some basis to conclude that an LLC is subject to an arbitration clause contained in the agreement that created it irrespective of whether it also signed the agreement (*Elf Atochem North American, Inc. v. Jaffari* (Del. 1999) 727 A.2d 286, 288, 293 [so holding]; accord, *Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (2012) 55 Cal.4th 223, 232-233, 246 [holding that homeowners association is bound by arbitration clause in formation agreement between developer and homeowners that association never signed]), we need not address this issue because we conclude that the LLC is equitably estopped from opposing enforcement of the arbitration clause.

It is well settled that "[t]he right to arbitration depends on the existence of an agreement to arbitrate . . . ."  (*Frederick*, *supra*, 100 Cal.App.4th at p. 697.)  Thus, "[a]s a general matter, only signatories to an arbitration agreement may enforce it."  (*Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1284 (*Rowe*).)  However, a nonsignatory to an arbitration agreement may be compelled to arbitrate by the doctrine of equitable estoppel. (*Id.* at p. 1286-1289; *Boucher v. Alliance Title Co.* (2005) 127 Cal.App.4th 262, 268 (*Boucher*).)  We review de novo "the legal determination whether and to what extent nonsignatories to an arbitration agreement" can be ordered to arbitrate a dispute.  (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352.)

The doctrine of equitable estoppel comes into play when "the claims plaintiff asserts against [the defendant] [are] dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing [an] arbitration clause."  (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 217-218 (*Goldman*); *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1238 (*JSM Tuscany*).)  The doctrine "prevent[s] a party from using the terms or obligations of

7

an agreement as the basis for [its] claims . . ., while at the same time refusing to arbitrate . . . under another clause of that same agreement." (*Goldman*, at p. 221.)

The doctrine is most commonly invoked when a defendant who did not sign the agreement moves to compel arbitration against a plaintiff who signed the agreement and who is bringing claims "dependent upon, or founded in and inextricably intertwined with," that agreement. (See *Rowe*, *supra*, 153 Cal.App.4th at pp. 1286-1287 [so holding]; *Boucher*, *supra*, 127 Cal.App.4th at pp. 271-272 [same].) But equitable estoppel also applies where a defendant who signed the agreement seeks to compel arbitration against a plaintiff who did not sign the agreement but whose claims are "dependent upon, or founded in and inextricably intertwined with," that agreement. Thus, in *JSM Tuscany*, *supra*, 193 Cal.App.4th 1222, the court compelled arbitration between defendants who signed three real-estate contracts and several plaintiffs who did not, but whose claims were grounded in those contracts. (*Id.* at pp. 1237-1240.) In finding the equitable estoppel applicable in this factual scenario, the court observed: "When [a nonsignatory] plaintiff is suing on a contract—on the basis that, even though the plaintiff was not a party to the contract, the plaintiff is nonetheless entitled to recover for its breach, the plaintiff should be equitably estopped from repudiating the contract's arbitration clause." (*Id*. at pp. 1239-1240.)

*JSM Tuscany* and its rationale apply here. Although the LLC's claims against defendants are not phrased as breach of contract claims, those claims involve its manager's misfeasance and malfeasance in operating the LLC and are therefore "dependent upon, or founded in and inextricably intertwined with," the Operating Agreement that purports to define "[t]he rights and liabilities of the [LLC's] Members," including its Manager. It is enough that the claims "arise out of the contract"; a formal breach of contract need not be alleged. (See *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418 [so holding, in concluding that agents are bound by arbitration clause signed by principal].) As in *JSM Tuscany*, the LLC is not permitted to rely on some of the Operating Agreement's terms, while ignoring its arbitration clause. The equitable estoppel doctrine applies.

8

The trial court did not address the doctrine of equitable estoppel, but the individual plaintiffs argued in their opposition papers that the doctrine did not apply for two reasons. First, plaintiffs argued that the LLC was not a *defendant* moving to compel arbitration. But the LLC's status as a nominal defendant as to some of the claims in this case, as well as whether the LLC moved to compel arbitration, are irrelevant to the question of whether the moving defendants can compel arbitration against the LLC *as a plaintiff*. What matters for purposes of equitable estoppel is whether the LLC, *as a plaintiff*, is relying on the Operating Agreement; because it is, it is equitably estopped from denying application of that agreement's arbitration clause. Second, plaintiffs asserted that defendants waived their right to compel arbitration in this case by *not* moving to compel arbitration in a different derivative action brought on the LLC's behalf. The defendants' tactical decisions regarding which forum they prefer in one case does not constitute an irrevocable election as to forum in every other case; we consequently reject the waiver argument as well.

## IV.    Direction Upon Remand

On November 13, 2015, while this appeal was pending, the bankruptcy court granted the LLC's motion to sell its assets. Under Section 10.1 of the Operating Agreement, the LLC is to be dissolved and its affairs wound up upon "[t]he sale . . . of substantially all [its] assets." It is unclear whether the LLC would have the power to continue litigating a derivative action. Corporations Code section 17707.06, subdivision (a) seems to contemplate that a dissolved LLC "continues to exist for the purpose of winding up its affairs, prosecuting and defending acts by or against it in order to collect and discharge obligations, disposing of and conveying its property, and collecting and dividing its assets." (Corp. Code, § 17707.06, subd. (a).) On the other hand, the LLC's Operating Agreement may define "wind up" more narrowly when it provides that, after the LLC that has sold substantially all of assets, it "shall continue solely for the purpose of winding up its affairs in an orderly manner, liquidating its assets, and satisfying the claims of its creditors." (Accord, *Trahan v. Trahan* (2002) 99 Cal.App.4th 62, 72 [defining "the process of winding up" as "'remain[ing] in existence to liquidate and wind

9

up (really, "wind down"):  I.e., to pay or make provision for payment of its debts; to distribute its remaining assets to its shareholders; and to file a certificate of dissolution with the Secretary of State'"].)  Consequently, there is the possibility that the LLC may be compelled by virtue of the sale and the terms of the Operating Agreement to abandon its derivative action.  We consequently remand this matter to the trial court to assess, in the first instance, whether the arbitration of the LLC's derivative action should be stayed pending the outcome of the asset sale to enable the court to determine whether the Operating Agreement precludes further prosecution of that action in the arbitral forum.

**DISPOSITION**

The trial court's order denying the motion to compel the LLC's claims is reversed and remanded.  Each party to bear its own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT

We concur:

_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

10