[No. B091009. Second Dist., Div. Three. Mar. 11, 1996.]

ARISTA FILMS, INC. EMPLOYEE PROFIT SHARING PLAN, Plaintiff
and Respondent, v.
GILFORD SECURITIES, INC., Defendant and Appellant.

496

**COUNSEL**

Ruben & McGonigle, Timothy D. McGonigle and Peter M. Kunstler for Defendant and Appellant.

Charles K. Wake for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Defendant and appellant Gilford Securities, Inc. (Gilford) appeals an order denying its petition to compel arbitration of a lawsuit brought by plaintiff and respondent Arista Films, Inc. Employee Profit Sharing Plan (Arista).[1]

Gilford did not obtain its own arbitration agreement with Arista. Therefore, the essential issue presented is whether Gilford, an "introducing broker," may enforce an arbitration agreement between Arista and Prudential-Bache Securities, Inc. (Prudential), the "clearing broker" (not a party to this action), as a third party beneficiary of that agreement.[2]

We conclude the language of the arbitration agreement reflects it was only intended to govern the relationship between Arista and Prudential and could not have alerted Arista to anticipate otherwise. Further, there was no showing the relationship between Prudential and Gilford was other than one between two completely independent entities. Accordingly, Gilford, having failed to obtain its own arbitration agreement with Arista, cannot "piggy back" onto Prudential's arbitration agreement with Arista.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

Gilford is a small securities brokerage firm based in New York City, with offices in other locations, including Century City, California. Gilford acted as the introducing broker for its customers, with a clearing broker performing the trade clearing services. Between 1988 and early 1993, Arista was a client of Gilford for the purpose of entering into various securities transactions. The Gilford broker who managed Arista's account was Elias Argyropoulos (Argyropoulos).

At the inception of the relationship between Gilford and Arista, Gilford's clearing broker was Securities Settlement Corporation (SSC). On April 27,

---

[1]An order denying arbitration is appealable. (*Rice* v. *Dean Witter Reynolds, Inc.* (1991) 235 Cal.App.3d 1016, 1022 [1 Cal.Rptr.2d 265].) Code of Civil Procedure section 1294, subdivision (a), states: "An aggrieved party may appeal from: (a) An order . . . denying a petition to compel arbitration."

[2]"In industry parlance, an introducing broker is the firm whose account executives deal with customers, i.e., solicit orders and offer recommendations. A clearing broker, on the other hand, has no client contact, but places and executes orders with the exchange at the direction of the introducing broker." (*Van Luven* v. *Rooney Pace, Inc.* (1987) 195 Cal.App.3d 1201, 1203 [241 Cal.Rptr. 248].)

[3]This summary is developed from the papers in the appellant's appendix in lieu of clerk's transcript.

1988, Louis George (George), as trustee for Arista, entered into two agreements with SSC, the first a "Customer's and Margin Agreement," and the second an "Option Approval Form and Agreement." Both of these agreements identified Gilford as the introducing broker and both contained arbitration clauses.

In September 1990, Gilford changed its clearing broker relationship and entered into an agreement with Prudential, whereby Prudential would act as Gilford's clearing broker. This change of clearing brokers by Gilford did not affect Arista, which continued to make its trades through Gilford.

On March 21, 1991, George, as trustee for Arista, executed a new client's agreement with Prudential, which provided in relevant part: "1. I agree as follows with respect to all of my accounts, in which I have an interest alone or with others, which I have opened or open in the future, with you for the purchase and sale of securities and commodities; [¶] . . . [¶] 14. * Arbitration is final and binding on the parties. * The parties are waiving their right to seek remedies in court, including the right to jury trial. * Pre-arbitration discovery is generally more limited than and different from court proceedings. * The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited. * The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry. [¶] The undersigned agrees, and by carrying an account for the undersigned you agree, all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. [¶] This contract shall be governed by the laws of the State of New York, and shall inure to the benefit of your successors and assigns, and shall be binding on the undersigned, my heirs, executors, administrators and assigns. Any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof, and whether executed or to be executed within or outside of the United States, shall be settled by arbitration in accordance with the rules then obtaining of either the NASD, AMEX or the Board of Governors of the New York Stock Exchange as I may elect. If I do not make such election by registered mail addressed to you at your main office within five (5) days after demand by you that I make such election, then you may make such election. Notice preliminary to, in conjunction with, or incident to such arbitration proceeding, may be sent to me by mail and personal service is hereby waived. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof, without notice to me."

Arista's claims against Gilford arose from the relationship between Arista and Gilford as customer and securities broker. Arista contends sometime in early 1990, Gilford's agent Argyropoulos began recommending certain securities represented as suitable for Arista to acquire. Arista allegedly began entering into transactions involving those securities in March 1991, and by January 1993, the value of its trading account at Gilford declined sharply, from about $230,000 to a negative balance. Arista attributes the losses in value of its account to the highly speculative nature of the transactions recommended by Argyropoulos, the inconsistency of the transactions with Arista's stated investment objectives, and the unsuitability of such transactions to Arista as an employee profit-sharing plan.

On or about February 23, 1994, Arista filed suit against Gilford and Argyropoulos in the superior court, alleging causes of action for securities fraud, breach of fiduciary duty and professional negligence. On June 24, 1994, Gilford answered the complaint. Both sides conducted discovery and trial was set for February 27, 1995. Gilford retained new counsel, which substituted in on December 15, 1994. At that juncture, Gilford applied ex parte for the action to be ordered into arbitration or, in the alternative, for its petition to compel arbitration to be heard on shortened time. The trial court denied the ex parte application and set the petition for hearing on January 13, 1995. Argyropoulos joined in Gilford's petition to compel arbitration. After receiving extensive briefing on the matter and hearing argument, the trial court denied the petition, ruling "the court finds that the parties seeking to compel arbitration are Not a named 3rd party beneficiary, a signatory to the agreement or an assignee." Gilford appealed the order.[4]

## CONTENTIONS

Gilford contends: because Arista indisputably knew Gilford had a relationship with Prudential that was essential to carry out Arista's trades, Gilford was a third party beneficiary or a disclosed agent, entitling it to arbitration; both California and New York law allow the establishment of a third party beneficiary relationship to be based on facts such as those present; the leading California decision indicates the controlling consideration is whether the customer has an adequate explanation of the relationship between the two brokers; there is a strong policy in favor of arbitration; and Gilford has not waived its right to arbitrate.

[4]Although Argyropoulos has filed a "Notice of Joinder by Defendant and Appellant Elias Argyropoulos" in Gilford's briefs, Argyropoulos did not file a notice of appeal and therefore is not properly before this court.

## DISCUSSION

1. *Overview of law concerning ability of introducing broker to enforce arbitration agreement between client and clearing broker.*

At the federal level, "[t]he overwhelming weight of authority . . . rejects attempts by introducing brokers to enforce arbitration clauses contained in customer agreements between their clients and clearing brokers. [Citations.]" (*Conway* v. *Icahn & Co., Inc.* (S.D.N.Y. 1990) 787 F.Supp. 340, 344; accord, *O'Connor* v. *R.F. Lafferty & Co., Inc.* (10th Cir. 1992) 965 F.2d 893, 901-902.)

Consistent therewith, *Van Luven* v. *Rooney Pace, Inc., supra,* 195 Cal.App.3d at page 1205, held the successor to a nonsignatory introducing broker could not enforce an arbitration agreement between its customer and a clearing broker. In *Van Luven,* at the time the client's account was lodged with the original introducing broker, she signed an arbitration agreement. The only parties to the arbitration agreement were the client and Bear Stearns, the clearing broker. (*Id.,* at p. 1203.) The account executive at the introducing broker who handled the client's accounts moved to another firm and transferred her accounts to the successor introducing broker. (*Id.,* at p. 1202.) When the client sued the successor introducing broker for damages incurred as a result of unauthorized securities transactions, the defendant moved to compel arbitration of the action. (*Id.,* at p. 1203.) The trial court denied the petition and the reviewing court affirmed.

With respect to the issue of third party beneficiary status, *Van Luven* observed a small introducing broker obviously benefits from the clearing broker arrangement, but without any evidence the customer and clearing broker intended, by the act of signing the agreement, to confer a benefit on the introducing broker, the introducing broker is no more than an incidental beneficiary without standing to enforce the arbitration agreement. (*Van Luven* v. *Rooney Pace, Inc., supra,* 195 Cal.App.3d at p. 1206.)

*Van Luven* found ". . . the literal language of the present agreement amply demonstrates it was only intended to govern the relationship between [the clearing broker] and [the client]; it hardly could have alerted [the client] to anticipate otherwise. And there was no evidence that the relationship between [the clearing broker] and [the introducing broker] was other than one between two completely independent entities." (195 Cal.App.3d at p. 1207.) Under the circumstances, *Van Luven* concluded ". . . an introducing broker who fails to obtain its own written customer agreement cannot enforce that of a broker operating in a completely different capacity . . . ." (*Id.,* at pp. 1207-1208.)

In a footnote, *Van Luven* observed "[u]pon a showing of a third party beneficiary status, agency relationship, broader language in the arbitration clause, or some other appropriate evidence, an introducing broker might be able to enforce an arbitration agreement between a customer and clearing broker, we suppose. [However,] [n]one of these features is present here." (195 Cal.App.3d at p. 1208, fn. 2.)

Based on markedly different facts, *Macaulay* v. *Norlander* (1992) 12 Cal.App.4th 1, 4 [15 Cal.Rptr.2d 204], held an introducing broker had standing, as a third party beneficiary, to enforce an arbitration agreement entered into between a clearing broker and a stock investor. The language of the agreement was dispositive. The client agreement between the client and the clearing broker stated "the introducing broker (Sutro) has authorized Tucker Anthony [the clearing broker] 'to enter into this Agreement with you on their [Sutro's] behalf and the terms and conditions hereof, *including the arbitration provision contained in paragraph 9, shall be applicable to all matters between such broker [Sutro] and you.*' [Fn. omitted.]" (*Id.,* at p. 7, italics added.)

Given this clear language in the client agreement expressly bringing the introducing broker within the arbitration provision, *Macaulay* properly held "Sutro was a third party beneficiary to the client agreement and entitled to arbitrate." (*Macaulay* v. *Norlander, supra,* 12 Cal.App.4th at p. 8.) The fact Sutro was not specifically named in the client agreement was immaterial because the agreement expressly extended the arbitration provision to the introducing broker. (*Id.,* at pp. 7-8.)

2. *Trial court properly denied petition to compel arbitration because Arista had not agreed to arbitration with Gilford.*

In approaching the question of whether Arista is required to arbitrate its dispute with Gilford, we are guided by the axiom that " '[a]rbitration is recognized as a matter of contract, and a party cannot be forced to arbitrate something in the absence of an agreement to do so.' [Citation.]" (*Chan* v. *Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 640 [223 Cal.Rptr. 838].)

Determination of arbitrability is a legal question subject to de novo review. (*O'Connor* v. *R.F. Lafferty & Co., Inc., supra,* 965 F.2d at p. 901; *Macaulay* v. *Norlander, supra,* 12 Cal.App.4th at p. 6.) The trial court's underlying factual findings will be set aside only if clearly erroneous. (*O'Connor, supra,* at p. 901.) Each case "is to be decided on its facts and requires that a court scrutinize the language in the closing broker's agreement to determine whether it selectively includes or excludes the introducing

broker from the arbitration provision. [Citations.]" (*Macaulay, supra*, 12 Cal.App.4th at p. 8.)

■ Here, the client agreement between Arista and Prudential, the clearing broker, provided in relevant part at paragraph 14: "The undersigned agrees, and by carrying an account for the undersigned you agree, all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. [¶] This contract shall be governed by the laws of the State of New York, *and shall inure to the benefit of your successors and assigns*, and shall be binding on the undersigned, my heirs, executors, administrators and assigns. Any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof, and whether executed or to be executed within or outside of the United States, shall be settled by arbitration . . . ." (Italics added.)

Thus, the arbitration agreement, by its terms, inured to the benefit of Prudential, as well as its successors and assignees. Gilford, the introducing broker, was neither Prudential's successor in interest nor its assignee.[5]

Further, unlike the client agreement in *Macaulay*, which expressly extended the arbitration provision to the introducing broker (*Macaulay* v. *Norlander, supra*, 12 Cal.App.4th at p. 7), the instant agreement failed to manifest any intent to confer such benefit upon the introducing broker.

Also troubling here is the recognition that " 'the right to select a judicial forum, vis-à-vis arbitration, is a " 'substantial right,' " not lightly to be deemed waived. [Citations.]' " (*Chan* v. *Drexel Burnham Lambert, Inc., supra*, 178 Cal.App.3d at p. 643.) There was nothing in the instant client agreement to alert Arista it was waiving the right to a jury trial, not only as to Prudential but also as to Gilford.

---

[5]Prudential client agreements, like the one Gilford seeks to enforce here, have been held unavailing to introducing brokers in *Wilson* v. *D.H. Blair & Co., Inc.* (N.D.Ind. 1990) 731 F.Supp. 1359, 1360-1363 and *Taylor* v. *Investors Associates, Inc.* (5th Cir. 1994) 29 F.3d 211, 215. In *Taylor*, as here, the arbitration provision in the Prudential client agreement "*expressly state[d]* that it is binding on the 'undersigned, my heirs, executors, administrators and assigns'; and shall 'inure to the benefit of your successors and assigns.' " (*Taylor, supra*, 29 F.3d at p. 215, italics added.) *Taylor* reasoned "[i]t follows that, if the parties had intended to benefit the [introducing] broker, then the Agreement would have said so. *Expressio unius est exclusio alterius*. [Fn. omitted.] Also, the Agreement makes no reference to defendants by name or function, nor does it refer to introductory brokers in general. In sum, no consent to arbitration with [the introducing broker] may be implied based solely on the relationship between the introducing broker and the clearing house." (*Ibid.*)

Further, there was no evidence the relationship between Prudential and Gilford was "other than one between two completely independent entities." (*Van Luven* v. *Rooney Pace, Inc., supra*, 195 Cal.App.3d at p. 1207.) Therefore, regardless of Arista's *awareness* of Gilford's and Prudential's respective roles in transacting Arista's trades, absent an *agreement* between Arista and Gilford for arbitration, Gilford cannot require Arista to arbitrate this matter. Gilford's argument ignores the fundamental principle that arbitration is a matter of contract. (*Chan* v. *Drexel Burnham Lambert, Inc., supra*, 178 Cal.App.3d at p. 640.) Thus, Arista's mere awareness of the Gilford/Prudential relationship is insufficient to bind Arista to arbitration with Gilford.

Lastly, the fact the client agreement provides "[t]his contract shall be governed by the laws of the State of New York," does not compel a different conclusion. "Under New York law, a nonsignator may, as a third party beneficiary, enforce the arbitration agreement *if the parties so intended.* [Citations.]" (*Macaulay* v. *Norlander, supra*, 12 Cal.App.4th at p. 7, italics added.) As discussed, there is nothing to show the contracting parties intended to confer any benefit upon Gilford. Therefore, Gilford cannot enforce the arbitration agreement.

For all these reasons, the trial court properly denied Gilford's petition to compel arbitration.

3. *Arista's request for sanctions on appeal denied.*

■ Arista seeks $11,600 in sanctions for what it deems to be a frivolous appeal by Gilford.

We are mindful "[a]n appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) Sanctions are to be imposed "most sparingly to deter only the most egregious conduct." (*Id.*, at p. 651.)

Notwithstanding the weight of authority against Gilford's position, as noted in *O'Connor* v. *R.F. Lafferty & Co., Inc., supra*, 965 F.2d at page 903, a "split of authority exists as to whether an introducing broker can enforce an arbitration agreement between an investor and a clearing broker as a third party beneficiary." Consequently, irrespective of our rejection of Gilford's effort to invoke the arbitration agreement between Arista and Prudential, the appeal is not sanctionable.

## DISPOSITION

The order is affirmed. Arista's request for sanctions on appeal is denied. Arista to recover costs on appeal.

Croskey, J., and Kitching, J., concurred.