Filed 8/22/16  Corn v. Superior Court CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| POE CORN, | B270867 |
| Petitioner, | (Super. Ct. No. BC592007) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| JOEL FREEDMAN, et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  Amy D. Hogue, Judge.  Petition granted.

Ervin Cohen & Jessup, Randall S. Leff and Russell M. Selmont, for Petitioner.

No appearance for Respondent.

Buchalter Nemer, Efrat M. Cogan, Michael L. Wachtell, and Carol K. Lucas, for Real Parties in Interest Joel Freedman, Mark Bell, and James MacPherson.

Grodsky & Olecki, Allen B. Grodsky and John Metzidis-Drennan, for Real Parties in Interest Avanti Healthcare Holdings, LLC and Avanti Hospitals, LLC.

Raskin Gorham Anderson Law, Gary J. Gorham, for Real Parties in Interest

Paladin Healthcare Capital, LLC and Paladin-Avanti Management, LLC.

Petitioner Poe Corn (petitioner) is a member and former CEO of Avanti Healthcare Holdings (Avanti Holdings), a limited liability company established to own and operate four Los Angeles-area hospitals. Petitioner is the *former* CEO because in 2012, other members of Avanti Holdings—Joel Freedman, James MacPherson, and, via a company he controlled, Mark Bell (collectively, the Individual Defendants)—ousted him from the position. In connection with his ouster and subsequent threats to sue, petitioner and Avanti Holdings, including its subsidiaries, entered into a settlement agreement. Three years later, in a derivative capacity on behalf of Avanti Holdings and one of its subsidiaries, petitioner sued the Individual Defendants and two companies affiliated with them (the Paladin Defendants)[1] alleging they breached fiduciary duties and committed other acts of corporate malfeasance. Relying on a settlement agreement provision in which "[t]he Parties agree[d] to arbitrate any disputes," the trial court entered an order compelling petitioner to arbitrate his derivative claims. We consider whether the order compelling arbitration of the derivative claims petitioner brought on behalf of Avanti Holdings and its subsidiary against the Individual and Paladin Defendants, who were not parties to the settlement agreement, must be reversed.

## I. BACKGROUND

### A. *Factual Summary*

Avanti Holdings is a Nevada limited liability company in which petitioner holds a 29.41 percent membership interest. The company's other members are Hollister Health Holdings, LLC (Hollister), of which Individual Defendant Mark Bell (Bell) is the sole member and manager; Joel Freedman (Freedman); James MacPherson (MacPherson); and Nick Orzano. Avanti Holdings is managed by a board of managers comprised of petitioner, MacPherson, and Bell. Its wholly owned subsidiary Avanti Hospitals, also a Nevada limited liability company, is likewise managed by petitioner, MacPherson, and

---

[1]     The Paladin Defendants are Paladin Healthcare Capital, LLC (Paladin Capital) and Paladin-Avanti Management, LLC (Paladin Management).

3

Bell. Although petitioner was terminated in January 2012 from his position as CEO of Avanti Holdings, he retained his membership interest in the entity and continued to serve as a manager of that entity and of Avanti Hospitals.

Approximately five months after he was removed as CEO, on May 29, 2012, petitioner entered into a confidential letter settlement agreement (the Letter Agreement) with Avanti Holdings. To be more precise, the paragraph at the outset of the agreement defined the "Parties" to the agreement as petitioner on the one hand and Avanti Holdings and its various subsidiaries (collectively, the Avanti Entities) on the other.[2] Under the terms of the agreement, the Avanti Entities agreed to pay petitioner certain immediate and future sums of money in exchange for his promise to assist in resolving certain litigation, to present any concerns about company compliance issues to a third party under specified guidelines, to support the sale or recapitalization of the Avanti Entities, and to work in their best interests. Paragraph nine of the Letter Agreement, titled "Resolution of Disputes," is central to the resolution of this appeal and comprises only seven words: "The Parties agree to arbitrate any disputes."

In addition to defining the "Parties" and including a provision by which the parties agreed to arbitrate any disputes, the Letter Agreement incorporated a mutual general release (the Release) agreed to by a broader group of entities and individuals. Among the individuals and entities that were named as parties to the Release—but not the Letter

---

[2]     We quote the relevant paragraph in full: "This Confidential Letter Agreement ('Agreement') sets forth the binding agreement between Avanti Healthcare Holdings, LLC (including each of its subsidiaries, Avanti Hospitals, LLC, Avanti Hospital Holdings I, LLC, Avanti Hospitals Holdings II, LLC, HealthPlus+ Holdings, LLC, Gardena Hospital Management, LLC, Gardena Hospital, L.P., MHG Hospital Properties, LLC, ELADH Management, LLC, ELADH, L.P., ELADH Hospital Properties, LLC, CPH Hospital Management, LLC, CPH Hospital Properties, LLC, CHHP Management, LLC, CHHP Holdings II, LLC, collectively 'Avanti') and Poe D. Corn ('Corn'), (collectively, the 'Parties')."

4

Agreement itself—were the Individual Defendants.[3]  By executing the Release, the parties thereto released each other from all claims of any kind, known or unknown, which each might have against the other "as of the Effective Date [of the Release], or which [might] hereafter arise out of, relate to, or be connected with [Avanti Holdings] or the operation of its business" apart from "obligations arising after the Effective Date."  The Release included a dispute resolution provision that specified: "[a]ny claim, dispute or controversy among the Parties arising out of, or relating to, this Release shall be settled on an expedited basis by binding arbitration in California before a single arbitrator mutually agreeable to the Parties."  The Letter Agreement and Release both provided they were to be governed by California law.

In June 2015, Avanti Hospitals entered into an agreement (the Management Agreement) with Paladin Management.  Pursuant to the Management Agreement, Avanti Hospitals agreed to pay Paladin Management for providing administrative and management services to Avanti Hospitals' facilities.  The Management Agreement also outlined a specific procedure for "any dispute, controversy or claim arising" thereunder: If the parties failed to initially resolve their dispute by meetings of management or with the assistance of a third-party consultant, the dispute would be "settled by binding arbitration, in California, before a single, mutually agreeable arbitrator . . . ."

---

[3]  Again, we quote the pertinent language in the Release in full:  "THIS MUTUAL GENERAL RELEASE (this 'Mutual General Release') is made and entered into as of this ___ day of May, 2012 (the 'Effective Date'), between Avanti Healthcare Holdings, LLC, a Nevada limited liability company (the 'Company'), Hollister Health Holdings, LLC, a California limited liability company ('Hollister'), Mark Bell, M.D., an Individual and Mark R. Bell Medical Corporation, a California professional medical corporation (collectively 'Bell'), Irv Edwards, M.D., an Individual and Irv Edwards, M.D., Inc., a California professional medical corporation (collectively 'Irv Edwards'), Emergent Medical Associates, a California partnership ('EMA'), James Edwards ('James Edwards'), an Individual, Joel Freedman ('Freedman'), an Individual, James MacPherson ('MacPherson'), an Individual, and Nick Orzano ('Orzano'), an Individual (collectively the 'Avanti Parties') on the one hand, and Poe D. Corn ('Corn'), on the other hand (collectively, the 'Parties')."

5

*B.    Procedural History*

Petitioner sued the Individual and Paladin Defendants, both directly in his personal capacity and derivatively on behalf of Avanti Holdings and Avanti Hospitals, in August 2015.[4] Petitioner's complaint alleged the Individual Defendants, who controlled Avanti Holdings, Avanti Hospitals, and the Paladin Defendants, had caused Avanti Hospitals and Paladin Management to enter into the Management Agreement in violation of special approval procedures for self-interested transactions that were prescribed by the operating agreements for Avanti Holdings and Avanti Hospitals. Petitioner claimed the Individual Defendants contrived the Management Agreement as a means to unlawfully divert funds from Avanti Hospitals into a company the Individual Defendants controlled to the exclusion of petitioner, i.e., Paladin Management. He asserted claims for breach of fiduciary duty, abuse of control, waste of corporate assets, unjust enrichment, and breach of contract against the Individual Defendants, and claims of aiding and abetting breach of fiduciary duty and intentional interference with contract against the Paladin Defendants. Petitioner also sought rescission of the Management Agreement. Consistent with regular

---

[4]    In 2013, petitioner in his direct capacity sued Avanti Holdings, Avanti Hospitals, Hollister, Freedman, Bell, MacPherson, and John Ferrelli (who is not a party to the current action) for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, gross negligence and breach of the duty of care, and declaratory and injunctive relief. Petitioner alleged those defendants mismanaged Avanti Holdings and its subsidiaries and failed to comply with the companies' governing documents, corporate law, and healthcare regulations, thereby subjecting petitioner to personal financial losses and exposure to third-party liability. The trial court concluded the arbitration provision in the Letter Agreement applied to the parties' dispute and granted a motion by the defendants in that case (except for Ferrelli) to compel the arbitration of petitioner's claims. The court found the arbitration provision's reference to "any disputes" was used "in the context of significant disagreements between [petitioner] and Defendants over the proper management of Avanti" and petitioner's claims "[went] directly to the same sorts of disputes with Defendants over their management of Avanti (including, but not limited to their legal or 'compliance' obligations) that gave rise to [petitioner's] ouster as CEO and the [Letter Agreement] in the first place." Petitioner's 2013 complaint is currently pending in arbitration.

6

practice for lawsuits brought in a derivative capacity, he named Avanti Holdings and Avanti Hospitals as nominal defendants.

Avanti Holdings and Avanti Hospitals, joined by the Individual Defendants and expressly unopposed by the Paladin Defendants, moved to compel arbitration of all claims in petitioner's lawsuit. They contended the Letter Agreement's broad arbitration provision mandated arbitration of the direct and derivative causes of action and that the Individual Defendants could rely on the arbitration provision despite not being signatories to the Letter Agreement under an agency theory.

Petitioner opposed the motion to compel, arguing (1) his claims were outside the scope of the arbitration provision in the Letter Agreement, (2) the Letter Agreement, which was between petitioner in his individual capacity and the Avanti Entities, did not apply to petitioner's derivative claims, in which petitioner was merely a nominal party acting on behalf of Avanti Holdings and Avanti Hospitals, the real plaintiffs in interest, (3) defendants could not rely on the agreement because the Avanti Entities had not performed their obligations thereunder, and (4) there were no arbitration agreements between petitioner and the Individual or Paladin Defendants.

At a hearing on the motion to compel arbitration, petitioner did not vigorously contest the issue of whether his direct claims (i.e., those brought in his personal capacity directly against the Individual and Paladin Defendants) must be arbitrated. He instead focused his efforts on convincing the trial court his derivative claims should not be compelled to arbitration. Petitioner argued that because derivative claims belong to the company in whose right relief is sought and not to the individual bringing them, petitioner's suit on behalf of Avanti Holdings and Avanti Hospitals gave him "no greater and no less rights than the company would have had the company initiated the lawsuit itself." Petitioner, therefore, contended he had no capacity to "sign away [the Avanti Holdings and Avanti Hospitals'] right [to sue]" when executing the Letter Agreement. In petitioner's view, because Avanti Holdings and Avanti Hospitals never agreed to arbitrate claims of malfeasance against the Individual Defendants, petitioner acting on behalf of Avanti Holdings and Avanti Hospitals could not be compelled to arbitrate such claims.

7

The Letter Agreement, in petitioner's view, was therefore irrelevant to whether he could prosecute his derivative claims in court.

The trial court construed the Letter Agreement differently, concluding that petitioner "forfeited his standing" or "bargained away his right" to initiate a suit in court against the Avanti Entities, in whatever capacity, when he signed the agreement. The court also emphasized, in the face of petitioner's arguments to the contrary, that petitioner's ability to bring a derivative action "would defeat the intention of the parties" in signing the Letter Agreement and that resolution of his direct and derivative claims in different fora might result in inconsistent relief.

The court accordingly granted defendants' motion to compel arbitration of all petitioner's claims, both direct and derivative. The court found petitioner "failed to demonstrate that his latest claims [were] outside the scope of the arbitration agreement," agreeing with the analysis of the trial judge in the separate but related 2013 action who concluded petitioner's causes of action in that lawsuit were encompassed by the arbitration provision in the Letter Agreement. (See fn. 4, *ante*.) The trial court's written ruling in this matter did not specifically address petitioner's arguments regarding the arbitrability of his derivative claims except to state the arbitration provision was "broad enough to encompass any dispute initiated by [petitioner] in any capacity, including the 'derivative' claims alleged in his complaint." The court also ruled the Individual and Paladin Defendants could compel arbitration of petitioner's claims against them, even though they were not signatories to the Letter Agreement, because petitioner's claims against them were "based upon and intertwined with a contract containing an arbitration agreement."[5]

---

[5] Defendants argued at the motion to compel hearing that the Management Agreement between Avanti Hospitals and Paladin Management independently required petitioner's derivative claims against the Paladin Defendants to be arbitrated, but the court concluded that issue was not properly before it and therefore declined to consider the argument.

8

Petitioner then filed a petition for writ of mandate in this court, urging us to direct the trial court to deny defendants' motion to compel arbitration solely as to petitioner's derivative claims.[6] As he did in the trial court, petitioner argued the Letter Agreement was inapplicable to his derivative claims because such claims were property rights of Avanti Holdings and Avanti Hospitals, the real plaintiffs in interest, as opposed to petitioner, a shareholder suing to enforce the entities' rights because the Individual Defendants, who controlled Avanti Holdings, would never sue themselves. Petitioner contended there was no agreement that compelled Avanti Holdings or Avanti Hospitals to arbitrate claims against the Individual Defendants, and so the trial court could not compel petitioner, in his capacity as a representative of those entities, to arbitrate such claims. Petitioner additionally argued, among other things, that the Management Agreement did not justify compelling arbitration of his claims against the Paladin Defendants, an issue the trial court declined to consider, because the Management Agreement itself was void and petitioner's claims were outside the ambit of its arbitration provision.

We issued an alternative writ ordering the trial court to vacate its order compelling arbitration or to show cause why we should not issue a peremptory writ of mandate requiring it to do so. The trial court did not vacate its order, and having considered further briefing by the parties, we now address whether cause exists to issue a peremptory writ.


## II. DISCUSSION

According to the Individual and Paladin Defendants (hereinafter "defendants," for simplicity's sake), when petitioner agreed "to arbitrate any disputes" with the Avanti Entities, he thereby agreed to arbitrate any derivative claims brought on their behalf. Defendants also contend that the nature of petitioner's claims relate to the Letter Agreement, which addressed the proper management of Avanti Holdings and its

---

[6] Petitioner does not seek reversal of the trial court's order compelling arbitration of his direct claims.

subsidiaries. Defendants further argue they may compel arbitration of petitioner's claims against them despite being non-signatories to the Letter Agreement because (1) those claims are closely intertwined with the claims requiring arbitration, (2) Paladin Management may independently compel arbitration pursuant to the Management Agreement, and (3) the Individual Defendants should be deemed identical to the Paladin Defendants based on petitioner's allegations that the Individual Defendants functioned as alter egos of the Paladin Defendants.

We hold petitioner is not required to arbitrate his derivative claims against defendants because the language of the Letter Agreement does not provide for arbitration of derivative claims brought by petitioner on behalf of the Avanti Entities. We also decline to address the parties' contentions regarding the Management Agreement, directing instead that these issues should be addressed on remand after further development as necessary.

### A.      *Standard of Review*

An order compelling arbitration may be reviewed by way of a petition for a writ of mandate. (*Garcia v. Superior Court* (2015) 236 Cal.App.4th 1138, 1149.) To the extent a trial court's decision interprets a contract without regard to conflicting extrinsic evidence, our review is de novo. (*Jenks v. DLA Piper Rudnick Gray Cary U.S. LLP* (2015) 243 Cal.App.4th 1, 8 (*Jenks*).) We will uphold any resolution of disputed facts by a trial court if supported by substantial evidence. (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1511 (*Suh*).)

Here, the trial court considered extrinsic evidence to conclude the Letter Agreement remained in effect but otherwise rendered its decision solely on the basis of its interpretation of the agreement itself. Because petitioner does not ask us to examine whether the Letter Agreement remains in force, the only question before us is the proper interpretation of that agreement. We decide that question de novo.

10

### B.    Analysis

#### 1.    General legal principles

Unless prohibited by its operating agreement or articles of incorporation, a member of a Nevada limited liability company may bring a derivative action on the company's behalf, alleging claims that arose while the plaintiff was a member, if other members or managers of the company are unlikely to initiate such action themselves. (Nev. Rev. Stats. §§ 86.483, 86.485.)  In this case, defendants do not argue petitioner lacks the ability to bring a derivative action under the operating agreements for Avanti Holdings and Avanti Hospitals or otherwise.  (Cf. *Long v. Silver* (4th Cir. 2001) 248 F.3d 309, 319 [terms of agreements at issue affected whether the plaintiff had a right to pursue a shareholder derivative action].)

Under California law, "[a] written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."  (Code Civ. Proc., § 1281.)  A court may order arbitration against a party opposing it where the court determines (1) "an agreement to arbitrate the controversy exists," (2) the party seeking arbitration has not waived its right to compel it, (3) there are no grounds to revoke the arbitration agreement, and (4) no party to the arbitration agreement is also a party to a pending action with a third party that arises out of the same transaction or series of transactions and thereby raises a possibility of conflicting rulings.  (Code Civ. Proc., § 1281.2.)

California public policy strongly favors arbitration, and "'doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration.  [Citations.]' [Citation.]"  (*Suh*, *supra*, 181 Cal.App.4th at p. 1512.)  Arbitration remains, however, a matter of contract.  Thus, the policy favoring arbitration does not supplant a court's initial duty to determine whether parties have actually agreed to arbitrate a dispute, applying general principles of contract law.  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); see also *BG Group, PLC v. Republic of Argentina* (2014) ___ U.S. ___ [134 S.Ct. 1198, 1206] [courts presume

11

parties intend courts to decide disputes about arbitrability, including "'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy'"]; *Granite Rock Co. v. Internat. Brotherhood of Teamsters* (2010) 561 U.S. 287, 299-300 [arbitration "'is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration'"].)

Arbitration agreements are "on equal footing with all other contracts" (*Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 443) and, as such, must be interpreted to effectuate the parties' intent. "The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense . . . ." (*Pinnacle*, *supra*, 55 Cal.4th at p. 236.) Once the party seeking to arbitrate establishes the existence of an arbitration agreement, the presumption in favor of arbitrability will render such agreement enforceable "'"unless it may be said with positive assurance that the arbitration [provision] is not susceptible of an interpretation that covers the asserted dispute."'" [Citations.]" (*Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761, 771 (*Gravillis*).)

### 2. *The Letter Agreement*

The language of the Letter Agreement unambiguously states, "[t]he Parties agree to arbitrate any disputes," with "Parties" defined as petitioner on the one hand and Avanti Holdings and its subsidiaries on the other. Derivative claims, however, are not between the Parties but between the Avanti Entities and the party against whom the derivative lawsuit is brought.

It is well established that the initiator of a derivative suit "stands in the shoes" of the company whose rights such person seeks to enforce, and "[t]he causes of action do not belong to him, but to [the company]." (*Frederick v. First Union Securities, Inc.* (2002) 100 Cal.App.4th 694, 697; accord, e.g., *Kamen v. Kemper Financial Services, Inc.* (1991) 500 U.S. 90, 95 ["The derivative form of action permits an individual shareholder

12

to bring 'suit to enforce a *corporate* cause of action against officers, directors, and third parties,'"], italics in original; *In re Zoran Corp. Derivative Litigation* (N.D. Cal. 2007) 511 F.Supp.2d 986, 1011 ["In a derivative action, however, the true plaintiff is the corporation; the shareholders bringing the action merely stand in the corporation's shoes"]; *Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1003 [corporation is the "real party plaintiff" in derivative action] (*Patrick*); *McDermott, Will & Emery v. Superior Court* (2000) 83 Cal.App.4th 378, 383 ["In holding a shareholder derivative action not to be tantamount to an assignment, we have reasoned that shareholders in such an action essentially 'stand in the shoes' of the corporation"]; Friedman et al., Cal. Practice Guide: Corporations (The Rutter Guide 2015) 6:664 ["As stated above, a derivative suit cause of action belongs to the corporation, and the shareholders merely 'stand in the corporation's shoes'"].)  If petitioner succeeds in his derivative suit, Avanti Holdings and Avanti Hospitals are "the only party that benefits from any recovery; the shareholders derive no benefit '"except the indirect benefit resulting from a realization upon the corporation's assets."'  [Citation.]"  (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108.)  Despite being the real party plaintiff in practice, the corporation must nonetheless be joined as a nominal defendant because it is an indispensable party "'[whose] rights, not those of the nominal plaintiff, are to be litigated.'  [Citation.]"  (*Patrick*, *supra*, 167 Cal.App.4th 995 at p. 1004; accord, *Ontiveros v. Constable* (2016) 245 Cal.App.4th 686, 692, fn. 2.)

Thus, the derivative claims at issue in petitioner's lawsuit are not effectively between him personally and the Avanti parties, but rather between Avanti Holdings and Avanti Hospitals on the one hand and the Individual and Paladin Defendants on the other. And it is this difference that compels us to conclude there is no valid agreement to arbitrate the derivative claims.  Under the Letter Agreement, only the "Parties" are obligated to arbitrate any disputes, and the dispute presented by the derivative claims is not a dispute among the Parties as defined in that agreement—petitioner is effectively absent from the derivative dispute, and defendants who were not parties to the agreement are present.

Defendants counter that an individual is capable of waiving his or her right to bring a derivative action, but we see nothing in the Letter Agreement to indicate petitioner did so in this case. Defendants' reliance on a Delaware case, *Elf Atochem North America, Inc. v. Jaffari* (1999) 727 A.2d 286 (*Elf*), is therefore unavailing. In *Elf*, three parties created a limited liability company whose operating agreement provided that "[n]o action at law or in equity based upon any claim arising out of or related to this Agreement shall be instituted in any court by any Member . . . ." (*Id*. at p. 294, fn. 42.) The company's members entered into the operating agreement; the company itself was not a signatory. (*Id*. at p. 288.) One of the members brought a derivative action against another and argued the arbitration provision in the operating agreement did not apply to the action because it was brought on behalf of the company, which was not a party to the agreement. (*Id*. at p. 289.) The Delaware Supreme Court held the arbitration provision applied to the derivative suit because the member entity that initiated the suit "contracted away its right to bring such an action" when it signed the operating agreement. (*Id*. at p. 294.)

*Elf* is inapposite here because the arbitration provision in that case, unlike this one, contained language reasonably suggesting it encompassed both derivative and direct claims. The arbitration provision in *Elf* applied to "any claim . . . *instituted* . . . by any Member." (*Id*. at p. 294, fn. 42, emphasis added.) The word "instituted" expanded the ambit of the provision beyond claims merely *between* the parties to the agreement to any claims *instituted by* a party. (*Id*. at p. 294 [arbitration provision did not "distinguish between direct and derivative claims" and "simply state[d] that the members may not initiate *any* claims outside of California"].)

The language, and the effect, of the arbitration provision in the Letter Agreement is different. The provision at issue here states "[t]he Parties agree to arbitrate any disputes." It includes no language, as there was in *Elf*, that the parties agreed to arbitrate any claims initiated by them, in whatever capacity. Nor does the language of the arbitration provision suggest the parties intended to bind themselves to resolving any disputes with an unnamed third party via arbitration. Rather, the arbitration provision we

14

confront is naturally and best read to mean petitioner and the Avanti Entities agreed to arbitrate any future disputes that arose between them.[7] The Avanti Entities' own return filed in this matter, which refers to "Corn's agreement *with Avanti*" and "Corn's agreement to arbitrate any dispute he may have *with Avanti*" (emphasis ours), confirms this is the correct reading. Indeed, the commonly accepted purpose of a settlement agreement is to settle a dispute or disputes that have arisen or may yet arise between the parties thereto; it would be unusual for such an agreement to impose obligations on one of its signatories as to disputes with a third party, and we see nothing in the text of the Letter Agreement that reflects the parties intended to forever bargain away the right to resort to the courts should they ever have a dispute with someone not a party to that agreement.[8]

---

[7] The Letter Agreement also followed the termination of petitioner's employment, and it contains no indication petitioner signed it in anything but his personal capacity. (Cf. *Benasra v. Marciano* (2001) 92 Cal.App.4th 987 [arbitration agreement signed by plaintiff in his corporate capacity did not apply to plaintiff's personal libel claim]; *Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674 [arbitration agreement signed by plaintiff in her capacity as attorney-in-fact did not apply to plaintiff's personal wrongful death claim].)

[8] Moreover, keeping in mind the well-established "stand-in-the-shoes" principle for derivative claims reveals petitioner and the Avanti Entities cannot have intended the Letter Agreement's arbitration provision to require arbitration of derivative claims. We believe even defendants would concede the arbitration provision was *at least* intended (and perhaps primarily intended) to require arbitration of disputes arising between petitioner and the Avanti Entities. But if that is true, and if the arbitration provision were meant to apply to derivative claims, that would mean the parties intended the provision to apply to disputes Avanti Holdings and Avanti Hospitals might have with themselves. There is unquestionably a strong public policy in favor of arbitration, but that public policy cannot be invoked to justify such an odd understanding of the parties' intent, one that is not in any way compelled by the text they chose. (See, e.g., *Securitas Security Services USA, Inc. v. Superior Court* (2015) 234 Cal.App.4th 1109, 1125 ["The parties' contractual intent is paramount in deciding the outcome of [a] motion to compel arbitration and [a] writ proceeding, for the 'overarching principle [is] that arbitration is a matter of contract' and 'courts must "rigorously enforce" arbitration agreements according to their terms' [citations]"]; see also Civ. Code, § 1639 [when a contract is

15

The distinction between the parties to the Letter Agreement (petitioner and Avanti Holdings and its subsidiaries) and the parties to the contemporaneously signed release (petitioner, Avanti Holdings, the Individual Defendants, and others) reinforces our understanding of the Letter Agreement's arbitration provision. Defendants argue that those among them who signed the Release should also be deemed "parties" under the Letter Agreement because the Letter Agreement expressly incorporates the Release. That argument disregards the express distinctions between the two documents in how they define the "parties" to each. If all of the relevant individuals and entities intended to provide for arbitration of "all disputes" among themselves, they could have done so. That they did not, despite entering the Letter Agreement and Release contemporaneously, indicates they did not intend for all of them to be bound by the terms of the Letter Agreement.

Again, that is not to say that petitioner was categorically incapable of contracting away his right to bring a derivative suit, only that doing so would have required different language in the Letter Agreement. (Cf. *Elf*, *supra*, 727 A.2d at p. 294, fn. 42.) Based on the language before us, the arbitration provision "''"is not susceptible of an interpretation that covers the asserted dispute."'" [Citations.]" (*Gravillis*, *supra*, 143 Cal.App.4th at p. 771.)[9]

In fact, we find the matter before us closer to *Trover v. 419 OCR, Inc.* (Ill. 2010) 921 N.E.2d 1249 (*Trover*), than to *Elf*. In *Trover*, a member of a limited liability company brought a derivative action on the company's behalf against two fellow members of the company as well as two outside parties. (*Id.* at p. 1252.) The members

---

reduced to writing the intention of the parties is to be ascertained from the writing alone, if possible].)

[9] Defendants do not argue that the Release itself compels arbitration of petitioner's derivative claims. At most, they contend it supports a finding that the Individual Defendants, who were not signatories to the Letter Agreement, should nonetheless be allowed to rely on that agreement to compel arbitration. Because we conclude the Letter Agreement does not mandate arbitration of petitioner's derivative claims, we do not consider the Release.

16

of the company had signed an operating agreement that required arbitration of "'[a]ny controversy, dispute[,] or claim between the parties arising out of, related to [,] or in connection with [the] Agreement or the performance or breach [t]hereof . . . .'" (*Id*. at p. 1253.) The company itself was not a signatory to the agreement. (*Id*. at p. 1254.) The Illinois appellate court found that even though the arbitration provision reached the subject of the derivative claims, it did not apply to the action because the company on whose behalf the claims were brought was not a party to the agreement. (*Id*. at p. 1255; see also *Mission Residential, LLC v. Triple Net Properties, LLC* (Va. 2008) 654 S.E.2d 888 [arbitration provision in limited liability company operating agreement signed by members did not apply to derivative suit brought by one member on behalf of non-signatory company against another member].) While Avanti Holdings and Avanti Hospitals, the functional plaintiffs in interest in this case, were parties to the Letter Agreement, the fact remains that that agreement was not made with the defendants in the derivative action. Thus, the Letter Agreement established no consent to arbitrate claims between the "real" plaintiffs in interest and the defendants in the derivative action.

We also conclude petitioner is not required to arbitrate derivative claims under an equitable estoppel theory, which is an exception to the general rule prohibiting non-signatories to an arbitration agreement from invoking the agreement to compel arbitration. "Under that doctrine, as applied in 'both federal and California decisional authority, a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are "intimately founded in and intertwined" with the underlying contract obligations.' [Citations.] 'By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement.' [Citations.] 'The rule applies to prevent parties from trifling with their contractual obligations.' [Citation.]" (*JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1237; see also *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1713 [equitable estoppel may obligate a signatory plaintiff to arbitrate claims

17

against non-signatory defendants where plaintiff's claims are inseparable from claims that are """"based on the same facts and inherently inseparable"" from arbitrable claims against signatory defendants"].)

Equitable estoppel does not apply to petitioner's derivative claims because there are no arbitrable derivative claims against signatory defendants. As we have already explained, the Letter Agreement's arbitration provision is naturally read to require arbitration of any disputes *between petitioner and the Avanti Entities*. Even if defendants could invoke the arbitration provision under an estoppel theory it would do them no good; we can and do say with positive assurance that the claims at issue they seek to arbitrate (petitioner's derivative claims) are not within the scope of the arbitration provision.

Furthermore, petitioner's derivative claims are not based on and intertwined with the underlying Letter Agreement obligations in any event. Petitioner's derivative claims advance allegations that the Individual Defendants breached the terms of Avanti Holdings' and Avanti Hospitals' operating agreements when they entered into the Management Agreement with Paladin Management in 2015, thereby harming Avanti Holdings and Avanti Hospitals irrespective of any independent, personal harm to petitioner. These allegations are not "dependent upon, or inextricably bound up with" (*Goldman v. KPMG LLP* (2009) 173 Cal.App.4th 209, 229-230) obligations created by the Letter Agreement's settlement of claims between petitioner and the Avanti Entities following his termination of employment.

### 3. *The Management Agreement*

The trial court did not consider whether the Management Agreement, which required Avanti Hospitals and Paladin Management to arbitrate disputes between themselves arising under the agreement, independently compelled arbitration of any or all of petitioner's derivative claims. The parties nevertheless argue in this writ proceeding before us that the agreement's arbitration provision does or does not apply to petitioner's claims. Defendants contend petitioner is bound by the agreement in his derivative

18

capacity because Avanti Hospitals, one of the real plaintiffs in interest, is so bound and because petitioner's claims arise under the agreement. Petitioner argues the arbitration provision in the agreement is inapplicable because the "crux of the derivative claim is that the [Individual Defendants] needed [petitioner's] consent to enter into the [Management Agreement]. Petitioner never gave his consent, so the [Individual Defendants] had no authority to bind [Avanti Holdings and Avanti Hospitals] to the [Management Agreement]. This in turn renders the [Management Agreement] void and the dispute is thus not subject to arbitration . . . ." Petitioner further argues that if the Management Agreement is not void, the derivative claims nevertheless fall outside the scope of its arbitration provision.

Whether or not a contract was validly formed, which "bear[s] on the threshold issue of arbitrability," may well turn on the resolution of issues of fact, issues that the trial court is better positioned to address in the first instance. (*City of Vista v. Sutro & Co.* (1997) 52 Cal.App.4th 401, 407.) Because the trial court in this case did not consider the validity of the Management Agreement, which may depend at least in part on resolution of questions of fact, the appropriate course of action is to remand and give the trial court the opportunity to do just that, taking further evidence and resolving material factual disputes as necessary.[10]

---

[10] Should the trial court deny defendants' motion to compel arbitration on remand, nothing we say in this opinion should be construed to express a view on whether further proceedings should be stayed pursuant to Code of Civil Procedure section 1281.2. That is a determination for the trial court to make in the first instance, if requested by a party.

DISPOSITION

The petition is granted.  Let a writ of mandate issue ordering respondent court to vacate its order compelling arbitration of petitioner's derivative claims and to issue a new and different order consistent with the views expressed in this opinion and its further determination of whether the derivative claims instituted by petitioner against Paladin-Avanti Management LLC must be arbitrated under the Management Agreement and, if so, whether petitioner's remaining derivative claims are so intertwined with that agreement as to justify arbitration of all of petitioner's claims.

Petitioner shall recover his costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

I concur:



RAPHAEL, J. *

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

TURNER, P.J., Dissenting

I would deny the petition.  In my view, the shareholder derivative claims are subject to the three arbitration clauses given their language's expansive nature.  (*Long v. Silver* (4th Cir. 2001) 248 F.3d 309, 313-314, 316-317, 319 [agreement to arbitrate "'any dispute arising out of or relating to this Agreement'" extends to shareholder's derivative claims].)